Kathleen McGowan, Appellant, v James F. McGowan, Respondent.

Second Department, December 30, 1988

### APPEARANCES OF COUNSEL

*Freedman, Weisbein, Samuelson & Rieger, P. C. (Elliot D. Samuelson, Martin Shaw* and *Anthony Yovino* of counsel), for respondent.

*E. Allan Riebesehl* for appellant.

### OPINION OF THE COURT

BRACKEN, J. P.

It is now settled that where, during a marriage, one spouse begins and completes a medical education, the professional license which is conferred in recognition of the completion of that education qualifies as marital property which is subject to equitable distribution pursuant to Domestic Relations Law § 236 (B) (5) *(O'Brien v O'Brien,* 66 NY2d 576). In the present case, two questions have arisen, both of which require determination of the scope of the rule of the *O'Brien* case. First, it is necessary to decide whether a teaching certificate, conferred during the parties' marriage but as the result of an educational program which had been completed prior to the marriage, may constitute marital property. Second, we must decide whether an academic degree may, for the purposes of equitable distribution, be considered analogous to a professional license.

Any difficulty that may be thought to exist in deciding these issues is markedly diminished by considering that the rationale espoused by the *O'Brien* court is essentially founded upon the concept that a professional license is a thing of value mainly, if not solely, because of the "enhanced earning capac-

ity it affords the holder" *(O'Brien v O'Brien, supra,* at 588). Since an academic degree may, under various circumstances, similarly enhance the earning potential of its holder, we see no valid basis upon which to distinguish such degrees from the professional licenses which pursuant to *O'Brien* are subject to equitable distribution. Also, considering that the enhancement of one spouse's earning capacity is the thing of value subject to equitable distribution pursuant to the *O'Brien* case, we conclude that such enhancement of earning capacity is acquired when it is actually achieved, that is, when the work that gave rise to it is finally completed, not at some later point when the completion of that work is formally recognized by the conferral of a degree or license.

We therefore hold that the teaching certificate conferred upon the plaintiff wife in the present case, which reflects certain achievements which she had attained before her marriage to the defendant, is not marital property. We also hold that the Masters degree which was subsequently conferred upon her is marital property, since it reflects the successful completion of a course of study undertaken during the marriage.

# I

The plaintiff wife graduated from LeMoyne College in 1961. Between June 1961 and August 1963, she completed certain graduate work at the State University of New York in Oswego. Completion of this course of graduate study enabled her to obtain permanent certification as a teacher. The parties were married in August 1963.

In 1977 the plaintiff wife obtained a Master's degree. This entitled her to a higher salary in her position as a teacher.

In the present action for divorce, the defendant husband moved, *inter alia,* for an order "determining that the teaching license acquired by the plaintiff is marital property". This request for relief was based upon the defendant's mistaken belief that the plaintiff had not obtained permanent teaching certification until 1977. The defendant husband also sought an order vacating a prior payroll deduction order which had been issued against him and canceling his own pendente lite maintenance obligations, as well as an order directing the plaintiff wife to pay him $75 per week as pendente lite maintenance. The extent of the marital property held by the plaintiff wife is, of course, a factor that relates to the maintenance or

temporary maintenance that should be awarded the defendant husband *(see,* Domestic Relations Law § 236 [B] [6] [a] [1]).

The plaintiff wife opposed this motion, and stated, *inter alia,* that "my education towards obtaining the permanent [teaching] certification was completed before my marriage to the defendant and, even though the permanent certification was issued approximately two weeks after the marriage ceremony, the defendant had nothing whatsoever to do with my obtaining the education necessary for the permanent certification". This assertion is not contradicted anywhere in the record.

The Supreme Court, in a decision dated July 15, 1987, held that "a teacher's certification [may be] a marital asset subject to equitable distribution" (136 Misc 2d 225, 228). It is not altogether clear that the court decided whether the teaching certificate at issue in this particular case constituted marital property, that is, a thing of value acquired during the parties' marriage. The Supreme Court also determined that the Master's degree obtained by the plaintiff in 1977 constituted marital property. These determinations were incorporated in an order, also dated July 15, 1987, from which the plaintiff wife has taken this appeal.

## II

The Master's degree obtained by the plaintiff wife in 1977, after the completion of studies which took place during the course of the parties' marriage, is, in our opinion, marital property. We therefore affirm the conclusion reached by the Supreme Court in this respect.

The central theme of *O'Brien v O'Brien* (66 NY2d 576, *supra),* is that a professional degree may constitute a marital asset because it reflects the enhancement of the future earning potential obtained by one spouse as a result of years of education completed only with the assistance and support of the other spouse. This is a recurrent theme throughout the *O'Brien* opinion, in which it is stated, for example, that "[a] professional license is a valuable property right, reflected in the * * * enhanced earning capacity it affords its holder" *(O'Brien v O'Brien, supra,* at 586), and that the license's "value is the enhanced earning capacity it affords the holder" *(O'Brien v O'Brien, supra,* at 588). The monetary value of the license is to be determined by calculating the present value of the enhancement of the future earning potential of the holder of the license *(O'Brien v O'Brien, supra; see also, Matsuo v*

*Matsuo,* 124 AD2d 864, 865; *Raff v Raff,* 120 AD2d 507, 508-509).*

We recognize that it is possible to identify certain distinctions between licenses and academic degrees. Generally, an advanced academic degree signifies that its recipient has become proficient in some scientific, artistic, or scholastic discipline, but such an advanced degree does not necessarily confer the legal right to engage in a particular profession. The completion of law school, for example, will be reflected by the granting of an academic degree which, as many recent graduates of law school realize all too well, does not carry with it the right to engage in any profession.

It is clear from a review of the *O'Brien* opinion, however, that the status of the professional license as a marital asset in that case did not depend on the fact that it entitled its holder to practice any particular profession. Rather, the critical factor was the existence of proof, in the form of expert testimony, that the license had a discernible monetary value because it enhanced substantially the future earning capacity of the holder. It is evident that in many circumstances an academic degree may also have such value. In the present case, in fact, the plaintiff wife forthrightly admits that her earning capacity increased as the result of her having obtained the Master's degree. It makes little sense to construe the Domestic Relations Law in such a way as to exempt from equitable distribution an MBA from the Harvard School of Business, which in real terms could be worth hundreds of thousands of dollars, and yet to subject to equitable distribu-

---

* For example, where, as in *O'Brien,* the husband's highest educational attainment before marriage was a college degree and he acquired a medical license during the marriage and shortly before the divorce, the value of the license as an asset is measured by, (1) calculating the difference between the average total lifetime income that a college graduate could expect and the average total lifetime income that a physician could expect, and (2) reducing that amount to a present value *(see, e.g., O'Brien v O'Brien,* 66 NY2d 576, 582; 2 McCahey, Valuation & Distribution of Marital Property § 30.03 [3], at 30-19—30-21). It should be noted that once the "student-spouse" embarks on his career and develops a history of *actual* earnings, the methodology outlined above should be discarded and the projections of future earnings should be based on actual past earnings produced by actual practice. In other words, the value of the degree or license merges into the value of the subject's professional or business practice *(see, e.g., Marcus v Marcus,* 137 AD2d 131; *Korman v Korman,* NYLJ, Sept. 16, 1986, at 13, col 4 [Sup Ct, Kings County, Rigler, J.]; *Vanasco v Vanasco,* 132 Misc 2d 227; *cf., Cronin v Cronin,* 131 Misc 2d 879; Jacobson, *O'Brien: Picking Our Way Through the Bramble Bush of Valuation,* 19 [No. 1] Fam L Rev 7 [Mar. 1987]).

tion a license to operate a junk yard *(see,* General Business Law § 60), upon the theory that the latter instrument, but not the former, entitles its holder to engage in a particular trade or profession.

None of the several arguments which were marshaled in opposition to the theory that a professional license may constitute marital property and which were rejected by the Court of Appeals in *O'Brien (supra),* are significantly more cogent when applied to a case involving an academic degree. One argument made in opposition to the recognition of professional licenses as marital property is based upon an anticipation of the practical difficulties which, it is foreseen, will plague the trial and intermediate appellate courts in their efforts to place a concrete monetary value on such licenses. A second argument focuses on the extremely unjust consequences which may result from an overestimation of the present monetary value of the enhancement of a matrimonial litigant's *potential* future earnings attributable to the knowledge, skill and ability signified by a professional license, particularly since such an overestimation of value will result in a substantial monetary judgment, which will be enforceable by all of the coercive procedures authorized by law, and which, unlike an order directing maintenance or child support, will not be subject to change *(see,* Domestic Relations Law § 236 [B] [9] [b]; *cf.,* Domestic Relations Law § 236 [B] [5] [e]; *O'Brien v O'Brien, supra,* at 591-592 [Meyer, J., concurring]; *Siegel v Siegel,* 132 AD2d 247, 254, *appeal dismissed* 71 NY2d 1021 [fluctuation of value of marital asset after divorce decree is entered does not warrant granting of postjudgment motion to modify property distribution]).

Both of these arguments were, however, soundly rejected in the *O'Brien* opinion and reconsideration of them now is not appropriate. What is important to note is that these arguments have no more persuasiveness with respect to the question of whether academic degrees should be recognized as marital property than they have with respect to the similar question involving professional licenses. The difficulties which may be encountered by the lower courts in placing a fair value on such a degree will not be measurably greater than those already encountered with respect to the valuation of licenses. The risk that undue hardship may result from the entry of judgments based upon overestimation of the value of degrees is certainly no greater than the similar risk which exists with respect to professional licenses.

Case law which has evolved in neighboring jurisdictions reveals that licenses and academic degrees are treated identically for the purposes of the distribution of a marital estate. We have found no example of an appellate court distinguishing between these two species of property and treating one differently from the other. While this observation may be of somewhat limited importance since New York appears to be one of a very small minority of States whose matrimonial law has been interpreted as providing for the inclusion of licenses or degrees within the definition of marital property, it must be remembered that the classification of licenses or degrees as marital property is but one way in which to compensate a "working spouse" for his or her contributions to the future earning potential of the "student spouse". Several States have interpreted their matrimonial laws as providing for the compensation of the "working spouse" by mandating that any alimony or maintenance award, or any distributive award of property, must be increased so as to account for the future earning potential of the student spouse *(see, e.g., Nelson v Nelson,* 736 P2d 1145, 1147 [Alaska]; *Wisner v Wisner,* 129 Ariz 333, 631 P2d 115, 122; *In re Marriage of Graham,* 194 Colo 429, 574 P2d 75, 78; *In re Marriage of Weinstein,* 128 Ill App 3d 234, 470 NE2d 551, 559-560; *In re Marriage of Horstmann,* 263 NW2d 885, 891 [Iowa]; *Drapek v Drapek,* 399 Mass 240, 503 NE2d 946, 949; *Stevens v Stevens,* 23 Ohio St 3d 115, 492 NE2d 131, 134; *Petersen v Petersen,* 737 P2d 237, 241-242 [Utah]; *DeWitt v DeWitt,* 98 Wis 2d 44, 296 NW2d 761, 769). Other courts have held that the matrimonial law of their State requires "reimbursement alimony", that is, an award of maintenance approximating the value of the "working spouse's" contributions to the "student spouse's" education *(e.g., Mahoney v Mahoney,* 91 NJ 488, 453 A2d 527, 534-535). None of these cases suggests that the "working spouse's" entitlement to compensation ought to depend on the fact that it was a license, rather than merely an academic degree, which the "student spouse" obtained. Several cases squarely hold to the contrary that one spouse is entitled to some form of equitable reimbursement in return for having contributed to the other spouse's attainment of an advanced academic degree *(e.g., Grosskopf v Grosskopf,* 677 P2d 814, 822 [Wyo] [advanced degree in accounting]; *Mahoney v Mahoney, supra* [M.B.A. degree from Wharton School of Business]; *In re Marriage of Graham, supra* [B.S. degree in engineering physics, M.B.A. from University of Colorado]; *In re Marriage of Olar,*

747 P2d 676 [Colo] [doctoral degree in physiology and biophysics]; *Hughes v Hughes,* 438 So 2d 146 [Fla] [B.S. degree]).

There is, in short, no legal precedent for the drawing of a distinction between academic degrees and professional licenses in connection with their status as marital property, and any such distinction would seem to us to be wholly arbitrary. We therefore conclude that the court properly held that the plaintiff wife's Master's degree is marital property.

## III

■ The next issue for consideration is whether the plaintiff wife's teaching certificate, awarded approximately two weeks after the marriage ceremony, also constitutes marital property. In light of the uncontradicted evidence in the record that the plaintiff had completed the requirements for that degree before the parties' marriage, we conclude that it is not.

The husband's argument in this regard is based upon a simplistic reading of the *O'Brien* case. The defendant husband's position is that, since the plaintiff's teaching certificate was acquired during the marriage, all of the enhancement of earning potential that it represents must also be deemed to have been acquired during the marriage. This, however, is obviously not the case. The real thing of value, that is, the plaintiff's increased skill, knowledge and ability, her "human capital", as it were, was acquired before the marriage and must therefore be deemed separate property.

As previously discussed, the consideration of a license or degree as marital property represents but one of several methods by which the courts throughout the United States have sought to remedy a single social injustice, i.e., the injustice that results when one spouse, to the detriment of his or her own fulfillment, labors in order to support the other spouse through an educational program, only to be divorced before the economic rewards of that program are realized. Virtually every appellate decision which has been written on issues such as those presented here recognizes that the so-called " 'student-spouse, working-spouse' syndrome" is the basic underlying problem to which a just solution is sought *(see, O'Brien v O'Brien,* 106 AD2d 223, 231, *mod* 66 NY2d 576, *supra; Conner v Conner,* 97 AD2d 88, 106-107 [Bracken and Brown, JJ., concurring]). The debate concerns itself only with the issue of whether the cure for this "syndrome" may be worse than the syndrome itself. It has been unanimously

decided by the Court of Appeals that with respect to professional licenses such a cure is not. It would certainly amount to a gross injustice, however, to consider a license or degree to be property, where the symptoms of the "student-spouse, working-spouse syndrome" are completely absent.

To apply the rule of the *O'Brien* case where the parties are married *after* one spouse has already completed his or her education, but before the degree referrable to that education has been conferred, would do nothing to remedy the social inequity previously alluded to and would merely result in the unjust enrichment of one party. The language of the *O'Brien* decision itself mandates this conclusion. The court in *O'Brien* held that "marital property encompasses a license to practice medicine *to the extent that the license is acquired during marriage*" (*O'Brien v O'Brien,* 66 NY2d 576, 584, *supra* [emphasis added]). Such language clearly implies that the valuable enhancement of a party's future earning potential is not something that is acquired instantly upon the receipt of a degree or license; rather, it is something which is acquired gradually through days, months or years of study. It would, in our view, be illogical and manifestly unjust to hold, for example, in the case of a man or woman whose marriage takes place *after* he or she has gone through several years of college, several years of medical school and several years of hospital internship and residency, but one day *before* his or her license to practice medicine is finally conferred, that the other spouse would, in the event of a subsequent divorce, be entitled to share in the full value of that license. In order to constitute marital property, a degree or license must be attributable to a course of study, at least part of which was undertaken during the marriage. The license or degree will constitute marital property only to the extent that it is attributable to the work done during the marriage.

For these reasons, we conclude that the teaching certification earned by the plaintiff wife in 1963 is not marital property.

## IV

Accordingly the order appealed from is modified by deleting the provision thereof granting that branch of the defendant's motion which was to determine that the plaintiff's teaching certificate constitutes marital property and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from.

WEINSTEIN, J. (concurring in part and dissenting in part). It is my position that the trial court erroneously extended the holding of the Court of Appeals in *O'Brien v O'Brien* (66 NY2d 576, *on remittitur* 124 AD2d 575) to the facts of this case in order to encompass both the plaintiff wife's teacher's certification and the Master's degree in Science in Reading which she acquired from C.W. Post College in 1977. As per my view of the *O'Brien* decision, a professional license may be found to constitute marital property subject to equitable distribution under appropriate conditions. Those conditions, which include acquisition of the license during the parties' marriage and direct or indirect contributions by the non-title-holding spouse, do not prevail in the instant case. Nor is a professional license in the sense contemplated by the Court of Appeals in *O'Brien*, i.e., a medical degree with its attendant enhanced earning capacity, at issue here. Accordingly, the extension of *O'Brien* to the instant scenario is unsupportable.

In the course of the *O'Brien* decision, the Court of Appeals stated the following: "The words mean exactly what they say: that an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family" *(O'Brien v O'Brien, supra,* 66 NY2d, at 584). The Court of Appeals clearly did not intend to classify every educational achievement obtained by one of the spouses of the failed marriage as property to which the other spouse might assert a claim on the ground that the other spouse contributed in some way to the educational attainment at issue and thereby contributed to the "profession or professional career potential" of the recipient spouse. In the language of the Court of Appeals, "[t]he Legislature has decided, by its explicit reference in the statute to the contributions of one spouse to the other's profession or career *(see,* Domestic Relations Law § 236 [B] [5] [d] [6], [9]; [e]), that these contributions represent investments in the economic partnership of the marriage and that the product of the parties' joint efforts, the professional license, should be considered marital property" *(O'Brien v O'Brien, supra,* at 585-586). Unlike the situation in *O'Brien* in which the defendant wife worked continuously during the marriage and contributed all of her earnings to the couple's joint effort, to the extent of sacrificing her own educational and career opportunities and traveling with her husband to Mexico for 3½ years while he attended

medical school there *(O'Brien v O'Brien, supra,* at 585), the defendant in the instant case made no such vital contribution. The record reveals that he worked for a time in Arkansas and, subsequent to a period of unemployment, obtained a job with the United States Postal Service in Washington, D.C. While employed by the Postal Service, the defendant resided away from the family for a five-year interval. With the exception of occasions on which he visited home for the weekend, the defendant left the entire burden of caring for the children and maintaining the household to the plaintiff *(cf., Capasso v Capasso,* 119 AD2d 268, 274). Moreover, although the plaintiff's permanent certification as a teacher was obtained approximately two weeks after the parties' marriage ceremony, the educational prerequisites leading up to it were completed prior to the marriage. It cannot be gainsaid that the equities clearly favor the plaintiff wife in the instant case.

Domestic Relations Law § 236 (B) (5) (d) (6) directs courts, in determining an equitable disposition of property, to consider a spouse's "direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party". Included in such "direct or indirect contribution[s]" are not only the spouse's own career sacrifices, but also his or her contributions in terms of income, the assumption of household responsibilities, the deprivation of marital assets which might otherwise have been acquired *(O'Brien v O'Brien, supra)* and emotional and moral support provided to the other spouse *(Price v Price,* 69 NY2d 8, 14). The record in the instant case provides no basis for concluding that the defendant has made any substantial contributions with regard to any of the aforementioned factors.

Readily distinguishable is this court's holding that a husband's enhanced earning capacity emanating from his registration as a physician's assistant constituted marital property subject to equitable distribution *(Morimando v Morimando,* — AD2d — [decided herewith]). In *Morimando,* the defendant wife was the sole wage earner while the plaintiff was enrolled full time in the physician's assistant program at the State University of New York at Stony Brook. Moreover, the record therein was replete with illustrations of economic and social sacrifices endured by the defendant on account of the plaintiff's schooling.

Given the fact that the educational prerequisites leading up to the plaintiff's permanent teacher's certificate were completed *prior to the parties' marriage* and absent any illustrations of economic and social sacrifices endured by the defendant in the instant case, I concur with the majority to the extent of concluding that the trial court erroneously labeled the plaintiff wife's teacher's certification marital property.

As the plaintiff has aptly noted, the defendant's motion papers did not include a request that the plaintiff's Master's degree as such be considered marital property subject to equitable distribution. The defendant was apparently under the mistaken belief that the teacher's certification was not obtained until 1977 when the plaintiff obtained her Master's degree. Consequently, the notice of motion merely demanded, with respect to this issue, an order "determining that the teaching license acquired by the plaintiff Kathleen A. McGowan is marital property subject to equitable distribution". Accordingly, the order of the trial court effectively exceeded the scope of the defendant's demand. I note, in any event, that contrary to the conclusion reached by the majority, I am of the view that an academic degree, unlike a professional license, is not property susceptible of distribution pursuant to Domestic Relations Law § 236 (B) *(Conner v Conner*, 97 AD2d 88; *Cronin v Cronin*, 131 Misc 2d 879). Rather, I find nothing in *O'Brien* which overrules the *Conner* court's holding that "we may not indulge in the fiction that an academic degree can be evaluated as reified marital property" *(Conner v Conner, supra*, at 102). I note furthermore that I have no quarrel with the majority's categorization of the main theme of the *O'Brien* decision in the following terms: "that a professional degree may constitute a marital asset because it reflects the enhancement of the future earning potential obtained by one spouse as a result of years of education completed only with the assistance and support of the other spouse" (majority opn, at 358). While the plaintiff wife's acquisition of a Master's degree may well result in the enhancement of her future earning potential, it can hardly be said that her education was completed only with the assistance and support of the other spouse. Accordingly, the plaintiff's Master's degree did not constitute marital property within the meaning of *O'Brien.*

In conclusion, I vote to reverse the order under review insofar as appealed from, and to deny that branch of the defendant's motion which was to determine that a teaching certificate constitutes marital property, and to delete the

provision determining that the plaintiff's Master's degree constitutes marital property subject to equitable distribution.

RUBIN and KOOPER, JJ., concur with BRACKEN, J. P.; WEINSTEIN, J., concurs in part and dissents in part in an opinion.

Ordered that the order is modified by deleting the provision thereof granting that branch of the defendant's motion which was to determine that the plaintiff's teaching certificate constituted marital property and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.