OPINION OF THE COURT
Joseph A. De Maro, J.
This is a contested matrimonial action; certain issues have *102 been settled by stipulation, others were submitted to the court for decision after trial. The parties were married on November 4, 1978. They have one child, Nicholas, born June 12, 1980.
HISTORY
The husband enrolled in medical school at the University of Brussels in Belgium in 1972. He met the wife in Belgium in 1977 while he was a medical student; the wife was a nurse. In January 1978 the husband passed an examination called the Educational Council for Foreign Medical Graduates which is required of students of foreign medical schools who wish to do a residency or practice in the United States. One year of training or internship is required by the University of Brussels before a student is eligible for a medical degree.
In July 1978 the husband left Belgium and went to Canada to fulfill the internship requirement by working at Moncton Hospital in Canada. He was able to work as a doctor practicing medicine as an employee of the hospital despite his lack of a degree or license. In November 1978 the parties were married; they lived together in Canada for approximately seven months in a small apartment until the husband completed his internship. During this period the wife was not employed and the parties lived on the husband’s salary from Moncton Hospital. In June 1979, after passing certain final examinations in Belgium, the husband received his medical degree.
In July 1979 the parties moved to New York. In August 1979 the wife became pregnant. She worked part time as a health aide in late 1979 and early 1980 but earned only approximately $1,000. The husband embarked on a three-year residency program in internal medicine at Booth Memorial Hospital. He was able to practice medicine as a hospital employee "under supervision” despite the fact that he was not licensed to practice in the State of New York. In order to become licensed to practice medicine in the State of New York the husband was required to pass the Federal licensing exam which is given twice a year. The first time the exam was given after the parties moved to the United States was December 1979. The husband did not take the exam because the wife asked him to travel with her to Belgium. The husband again put off taking the test in June 1980 in anticipation of Nicholas’s birth. There was no urgent need for the husband to take *103 the exam since his residency at Booth Memorial would not be completed until 1982 and a license was not a prerequisite to his employment at the hospital. In September 1980 the parties purchased their first home on University Road in Bayville. In June 1981 the husband passed the required exam and acquired a license to practice medicine as a general practitioner in the State of New York. From 1979 through 1982 the husband worked at Booth Memorial Hospital and took a residency in internal medicine. In September 1982 the husband failed the examination required for board certification in internal medicine; he attributed his failure to his inability to prepare for the exam due to a visit by the wife’s family. He passed the exam in September 1983 and received board certification in internal medicine; he has not however, to date, practiced internal medicine. In November 1986 the parties purchased a second residence at Woods Court in Bayville. In January 1988, subsequent to the commencement of this action, the husband passed certain examinations to become board certified as a specialist in emergency room medicine. He was not required to undertake a residency in this field as he had been employed as an emergency room doctor at Booth Memorial for the requisite length of time.
EQUITABLE DISTRIBUTION OF THE HUSBAND’S MEDICAL LICENSE
The Court of Appeals has clearly held that one spouse’s contributions to the other spouse’s profession or career represent an investment in the economic partnership of the marriage and the product of the parties’ joint efforts, the professional license, should be considered marital property subject to equitable distribution. The professional license is a valuable property right measured by the enhanced earning capacity it affords its holder. (O’Brien v O’Brien, 66 NY2d 576, 586.) Contributions to this economic partnership by the spouse not obtaining a license can include investment of substantial assets or income as wage earner, sacrifice of his or her own educational or career goals, performance of the bulk of household and child-rearing duties and responsibilities, and the deferment of the acquisition of marital assets other than the license which could have been acquired by the parties if the licensed spouse had been employed rather than occupied with the study and training necessary to acquire the license. (O’Brien v O’Brien, supra, at 585.)
The monetary value of a professional license is determined *104 by calculating the present value of the enhancement of the future earning potential of the holder of the license. The enhancement of future earnings is measured by comparing the income-earning potential of the subject spouse at the time of the marriage with the income-earning potential of the licensed spouse as of the commencement of the matrimonial action. (Marcus v Marcus, 137 AD2d 131.)
The issues in the instant action are twofold. First, the experts testifying on the valuation issue differ greatly in their opinions as to the husband’s earning potential as of the date of the marriage and the date of the action. Second, the parties differ greatly in their contentions as to the extent of the wife’s contribution to any earning enhancement achieved by the husband during the marriage.
Conrad Berenson, Ph.D., testified on behalf of the husband; David Marcus, C.P.S., testified on behalf of the wife. Both experts impressed the court as competent and knowledgeable in their field of expertise. Both experts relied on statistical data compiled by the American Medical Association in preparing their valuations. Both utilized a flat projection method of valuation, neither increasing projected lifetime income by prospective productivity, seniority or inflation, nor discounting for interest. Yet the experts reached vastly different conclusions as to the monetary value of the husband’s enhanced earning potential acquired during the marriage. The difference is the result of the manner in which each expert applied the facts of the case to the statistical data.
The wife’s expert valued the husband’s income-earning potential at the time of the marriage to be the equivalent of a person with five years’ college education. He chose this as the appropriate measure because as of the date of the marriage the husband had not yet obtained his medical degree. He presented two options as the husband’s income-earning potential as of the commencement of the action. The first is the income-earning potential of a non-self-employed board-certified specialist in internal medicine. The second is the income-earning potential of all doctors of internal medicine. After discounting for average life expectancy, the present value of the enhanced earning potential of all doctors of internal medicine was calculated to be $1,858,751. The annual difference in the average earnings of a five-year college graduate and a non-self-employed doctor of internal medicine was calculated to be $891,442. The wife urges the court to adopt a "best use” concept similar to the "ability to earn” concept applied *105 in support cases such as Hickland v Hickland (39 NY2d 1), and to thereby value the husband’s average earning ability at the commencement of the action to be that of “all internists”.
The husband’s expéft took a completely different approach. He postured that the husband had completed all the education and training necessary to obtain a medical degree and license to practice general medicine in the State of New York prior to the marriage. His analysis of the enhanced earning potential acquired during the marriage begins by categorizing the husband’s status as of the date of the marriage as that of a licensed general practitioner. The husband’s expert did not compare this average annual salary to the average annual salary of any category of doctors of internal medicine. He explained that he did not make such analysis because the husband has not, to date, utilized the board certification obtained in 1983 to practice internal medicine. The husband has worked only as an emergency room doctor during the marriage. No board certification is required to work as an emergency room doctor. The husband’s expert did however offer the court a comparison between the average annual earnings of a general practitioner and the average annual earnings of a physician employed in a hospital emergency room. The husband’s expert advised the court that the current value of the difference in the average lifetime earning of an emergency room doctor totals $495,117. (The wife asserts that the husband’s expert’s analysis is flawed because the calculations of average salary of emergency room doctors were not based on accepted statistical tables. The court however will disregard the calculations of average income of emergency room doctors for other reasons to be set forth below, so the objection to the statistical accuracy of these projected earnings is not relevant.)
Unfortunately, the court is unable to adopt the analysis of either expert; both conclusions are flawed. Clearly, the husband cannot be categorized as a five-year college graduate as of the date of the marriage, as was suggested by the wife’s expert. The court recognizes that the actual medical license was obtained during the marriage and constitutes a marital asset. The court finds however that for all intents and purposes the husband completed the education and training necessary to become licensed to practice general medicine in the State of New York prior to the marriage. Any contribution by the wife toward the attainment by the husband of a medical degree which qualified him to take the test to become *106 licensed in this State was unsubstantial and inconsequential. (See, McGowan v McGowan, 142 AD2d 355.) The "student-spouse, working-spouse” syndrome characterized in the O’Brien decision (supra) is not applicable in the instant action. The husband worked and supported the wife throughout the marriage; the wife made no financial contribution toward the husband’s acquisition of a medical license. The wife in no manner contributed toward the husband’s acquisition of his medical degree. The later acquisition of the medical license required no effort on the part of either spouse other than the formality of the requisite exam. The court therefore finds that the wife made no contribution toward the acquisition by the husband of his medical license.
The appropriate starting point in measuring the enhanced earning potential acquired during the marriage is to characterize the husband as a licensed general practitioner as of the date of the marriage, as was suggested by the husband’s expert. Thereafter the analysis of the husband’s expert becomes less useful. The husband chose not to work as a physician-general practitioner. He has been employed rather as an emergency room doctor. Emergency room doctors as a statistical group earn more than the statistical group categorized as all general practitioners. However, no degree, license, test or other activity other than that required for general practice is required for emergency room practice. The husband took no test, obtained no degree or license nor participated in any income-enhancing activity to qualify him to become an emergency room doctor beyond those activities attributed by the court to his efforts prior to the marriage. He selected a demanding but more lucrative form of general practice when he selected to work as an emergency room physician, but no marital efforts other than the selection of the employment option, contributed to the enhancement of earnings enjoyed by an emergency room doctor as opposed to a general practitioner. The comparison of the lifetime average earnings of a general practitioner with the lifetime average earnings of an emergency room doctor is therefore not relevant to the court’s analysis of enhanced earning potential acquired by the husband during the marriage.
The husband was not however qualified only as a general practitioner as of the date of the commencement of this action. He obtained board certification as a specialist in internal medicine in 1983. Despite testimony which indicated that it was the husband’s dream to open his own medical office to *107 practice internal medicine, this was never accomplished due to numerous financial and personal circumstances which occurred during the marriage. While the court cannot foretell the future, the court cannot ignore the acquisition of this certification. The certification to practice internal medicine enhanced the husband’s earning potential and constitutes a marital asset. The acquisition of the certification during the marriage is the result of the direct efforts of the husband and the indirect contribution of the wife. The wife made no financial contribution. The parties’ testimony conflicted to the extent of the wife’s effort at assisting the husband with his studies. The court finds the testimony of the husband credible and finds that the wife’s assistance to the husband with requisite studying was minimal. As the wife was not obligated to work to support a student spouse, she was not required to delay having a child. Further, the wife did not forego the acquisition of other marital assets while the husband was pursuing his residence, as he was employed full time during this period; the parties in fact purchased two homes and acquired substantial tax-deferred assets. The court in fact finds that certain conduct on the part of the wife such as her desire to travel to Belgium had a negative effect on the husband’s efforts to obtain board certification. The wife did, however, to a large extent assume the obligation of caring for Nicholas and maintaining the marital residence to enable the husband to work and study. She sacrificed her own career as a nurse. There was little testimony at trial however relevant to any career opportunity relinquished by the wife. The court finds that based upon the length of the marriage and the indirect contribution by the wife, she is entitled to 10% of the enhanced earning potential acquired by the husband by virtue of the board certification in internal medicine. (See, Maloney v Maloney, 137 AD2d 666.)
The last question to be determined by the court relevant to this topic is the appropriate measure of the husband’s income-earning potential on the date of the commencement of the action by virtue of his board certification. The husband argues that he never practiced internal medicine during the marriage. The court finds however that the monetary value of this certification in internal medicine is the enhanced earning capacity or potential it affords to the husband, the holder of the certification. (See, O’Brien v O’Brien, supra.) While the husband has not to date utilized the potential earning capacity incident to the certification, he did acquire this capacity *108 during the marriage. By virtue of the certification the court finds that as of the date of the commencement of the action the husband’s income-earning potential was that as set forth statistically by the wife’s expert as the average annual earnings of "all internists”. The court declines to apply the average annual earnings of non-self-employed internists; the certification acquired by the husband in not limited to employee doctors of internal medicine. The husband is certified and has the potential to be either a self-employed or employee doctor of internal medicine, therefore the value of his certification is most properly assessed by the average annual earnings of "all internists”. Further, the court has already determined that as of the date of the marriage the husband’s income-earning potential will be measured by the average annual salary of "all” general practitioners. It would be inconsistent to calculate an enhanced earning capacity by comparing the average annual earnings of all general practitioners with only non-self-employed internists.
The court notes that in utilizing this approach it is applying the specific facts of this case and is not adopting "best use” of a license or certification as a rule of law. The earning potential value to be assigned to a particular license or certification should depend on the facts of a particular case. For example, a court might find in a marriage of long duration, say 30 years, wherein one spouse acquired board certification in internal medicine in the early years of the marriage but never utilized same and thereafter was employed for the next 25 years as an emergency room doctor, that the earning potential of the spouse on the date of the commencement of the action was that of an emergency room doctor. Based upon the age of the spouse and the long-term decision during the economic partnership of the marriage not to utilize the earning enhancement potential of the board certification, it would be inappropriate to measure the doctor spouse’s income capacity as of the date of the action as that of an internist as opposed to an emergency room doctor based upon the concept of "best use”.
The facts in the instant action are very different from the above hypothetical. Testimony indicated that the husband’s dream was the private practice of internal medicine. The parties considered several options toward achieving this goal during the marriage. The husband is 38 years old and statistically he is expected to practice medicine for another 25 years. Although he obtained the certification almost five years prior *109 to the commencement of this action, many factors including the purchase of two marital residences, the lack of financial resources, the wife’s ties to Belgium and the parties’ marital difficulties contributed to the husband’s inability to open an office for the private practice of internal medicine. He did however acquire the ability to do so during the marriage; he worked for over three years to obtain this capability; he is young and will practice medicine for many years. Under the facts of this case it is appropriate to value the husband’s earning potential as of the date of the action as that of an internist despite the fact that he was actually employed as an emergency room doctor and was not practicing internal medicine.
The annual average net earnings of an internist total $108,900; the annual average net earnings of a licensed general practitioner total $86,561. The present value of the husband’s enhanced earning capacity by virtue of the board certification in internal medicine discounted for mortality is $571,878 calculated as follows: $108,900 less $86,561 equals $22,339 multiplied by 25.6 years.
The court notes that it considered the option of awarding the wife a fixed percentage of the husband’s future gross earnings for a period of years, with a required minimum payment. (See, Kutanovski v Kutanovski, 120 AD2d 571; Florescue, The Degree Without the License, NYLJ, June 27, 1989, at 3, col 1.) It has been suggested that this approach would give the nonlicensed spouse a share of the actual future enhanced earnings rather than a share of some hypothetical average which may never be realized by the licensed spouse. The court rejected this approach on the basis that over a period of years the licensed spouse’s actual gross income is subject to innumerable, legitimate variables not attributable to the marriage which would render the award to the nonlicensed spouse of a percentage of future gross earnings fortuitous. The licensed spouse could, for example, obtain additional earning-enhancement credentials after the marriage enabling him or her to engage in lucrative employment, the enhanced valuation of which would not be attributable to the marriage and should not be shared by the former spouse.
The husband shall pay the wife the sum of $57,188 as a distributive award for the value of the board certification in internal medicine acquired during the marriage. The wife is entitled to interest on the deferred payments scheduled herein. It would be inequitable to award a spouse a share of *110 the present value of an asset and then require the spouse to defer receipt of that share. (See, Majauskas v Majauskas, 61 NY2d 481; Curley v Curley, NYLJ, July 24, 1989, at 28, col 4.) The husband may at his option pay the sum due earlier to avoid accrual of interest.