ROBERTA K. FINOCCHIO, Appellant, v VINCENT J. FINOCCHIO, JR., Respondent.—Judgment modified on the law and as modified affirmed without costs and matter remitted to Supreme Court, Onondaga County, for further proceedings, in accordance with the following memorandum: The trial court erred in denying to plaintiff the opportunity to offer evidence of defendant's enhanced earning capacity for the full economic life of his license to practice law. As a consequence of the error and the method employed by the court in evaluating the marital asset, plaintiff was denied an award of any interest in the marital asset beyond the commencement of this action.

The parties were married on March 26, 1970 and separated in September 1986, and this action for divorce was commenced on March 5, 1987. At trial the parties presented expert proof as to the value of defendant's law practice. Both experts utilized an "excess earnings" method which was adopted by the court. By that method of valuation, the value of the tangible assets of the practice was added to the intangible value, or good will. The intangible value was ascertained by comparing defendant's earnings in the private practice of law with that which he could have earned as a public sector attorney with similar experience. The "excess earnings" were reduced by the value of defendant's return on tangible assets and the resultant figure was multiplied by a capitalization figure of 2.7 to establish the fair market value of the practice as of the date of the commencement of the action. The court premised its distribution to plaintiff of an equitable share of the practice upon its fair market value at that time. Plaintiff was thus improperly denied any award for the enhancement of defendant's earning power beyond the date that the action was brought.

Although plaintiff sought at trial to offer evidence of separate evaluations of defendant's degrees, license and practice, and the court properly refused to receive such evidence in the

form requested, it was nevertheless error to deny plaintiff any opportunity to present evidence of defendant's future earning capacity. There can be no doubt that defendant's degrees and license to practice law are marital assets subject to equitable distribution (see, O'Brien v O'Brien, 66 NY2d 576; McGowan v McGowan, 142 AD2d 355; see also, DiCaprio v DiCaprio (162 AD2d 944 [decided herewith]). The value of such assets is reflected in the enhanced earning capacity that they afford the holder (see, McGowan v McGowan, supra, at 358; see also, O'Brien v O'Brien, supra, at 586).

The concept of merger had its origin at the appellate level in the Second Department in Marcus v Marcus (137 AD2d 131). The court pronounced that where a professional practice has been ongoing for a number of years "the medical license should be deemed to have merged with and been subsumed by the practice itself" (Marcus v Marcus, supra, at 139). The clear purpose of that pronouncement was to prevent "double recovery" (Marcus v Marcus, supra, at 139). Thus the court deemed it inappropriate in such circumstances to make a separate award for the license itself. It would follow, of course, that duplicative awards should not be made for educational degrees underlying the license and the established professional practice.

It was not the intention in Marcus (supra), nor could it have been, to apply merger in a way which would deprive the nonlicensee spouse of an award of any interest of the marital asset beyond commencement of the matrimonial action. Yet that is precisely the interpretation adopted by the dissenter, despite its obvious conflict with the requirement that the marital asset be valued in accordance with "the enhanced earning capacity it affords the holder" (O'Brien v O'Brien, 66 NY2d 576, 588, supra). The court made it clear in O'Brien (supra, at 586) that "[a]n established practice merely represents the exercise of the privileges conferred upon the professional spouse by the license and the income flowing from that practice represents the receipt of the enhanced earning capacity that licensure allows". Indeed, in O'Brien, the court approved the method employed by the trial court in premising the present full value of the professional license upon a formula that took into account the anticipated earnings of the licensee through age 65.

That the Second Department intended to apply the merger concept as we have indicated is manifested by its later decision in McGowan (142 AD2d 355, supra). There, the court wrote: "[W]here, as in O'Brien, the husband's highest educa-

tional attainment before marriage was a college degree and he acquired a medical license during the marriage and shortly before the divorce, the value of the license as an asset is measured by, (1) calculating the difference between the average total lifetime income that a college graduate could expect and the average total lifetime income that a physician could expect, and (2) reducing that amount to a present value *(see, e.g., O'Brien v O'Brien,* 66 NY2d 576, 582; 2 McCahey, Valuation & Distribution of Marital Property § 30.03 [3], at 30-19— 30-21). It should be noted that once the 'student-spouse' embarks on his career and develops a history of *actual* earnings, the methodology outlined above should be discarded and the projections of future earnings should be based on actual past earnings produced by actual practice. In other words, the value of the degree or license merges into the value of the subject's professional or business practice *(see, e.g., Marcus v Marcus,* 137 AD2d 131; *Korman v Korman,* NYLJ, Sept. 16, 1986, at 13, col 4 [Sup Ct, Kings County, Rigler, J.]; *Vanasco v Vanasco,* 132 Misc 2d 227; *cf., Cronin v Cronin,* 131 Misc 2d 879; Jacobson, *O'Brien: Picking Our Way Through the Bramble Bush of Valuation,* 19 [No. 1] Fam L Rev 7 [Mar. 1987])" *(McGowan v McGowan, supra,* at 359, n).

We are in agreement with that analysis. Thus where, as here, the value of defendant's degree and license has merged into the value of his professional practice, the method of valuation of the marital asset must include a projection of the licensee's future earnings "based on actual past earnings produced by actual practice" *(McGowan v McGowan, supra,* at 359, n). Accordingly, we modify the judgment by deleting so much of the award to plaintiff as represents her interest in the defendant's law practice and remit the matter for a hearing solely for the purpose of establishing plaintiff's equitable share of defendant's law practice in accordance with that method.

All concur, except Lawton, J., who dissents and votes to affirm, in the following memorandum.

Lawton, J. (dissenting). I respectfully dissent. The concept of merger is that a professional license obtained during a marriage at some point no longer has a value of its own and loses its identity as a separate marital asset because it is subsumed into the professional practice *(see, Marcus v Marcus,* 137 AD2d 131, 139-140). Where a professional license and practice merge, the trial court values only the practice as a single asset and makes a distributive award *(see, Marcus v Marcus, supra).* A professional practice's value is, as with any other

business, its present fair market value, to wit, what a willing purchaser would pay for it.

In the present case, the trial court found that defendant, since his admittance to the Bar over 14 years ago, has devoted his entire work effort to develop his law practice. This is not a new practice but, rather, one that is fully developed. Given these circumstances, defendant's license, which was earned during the marriage, no longer has a separate value or identity but, rather, has merged into the professional practice. Indeed, the majority agrees that the license and practice have merged since a new trial is granted for proper valuation of the practice only, rather than the license and practice separately.

In valuing the practice in this case, the majority has added a new and, in my opinion, inappropriate component. In this regard, the majority holds (at 1044) that the value of the practice is its present fair market value plus the postdivorce value of "defendant's enhanced earning capacity for the full economic life [working life] of his license to practice law." Enhanced earning capacity resulting from obtaining a degree or license is a method of valuation used in determining the value of a license *(see, O'Brien v O'Brien,* 66 NY2d 576, 588). This methodology is only used, however, when a license must be valued separately because a practice has yet to develop or has not fully matured *(see, Marcus v Marcus, supra).* Here, we are not valuing the license because, as we all agree, the license has merged with and been subsumed into the practice. The value of the practice, as testified to by both experts in this case, is its present fair market value.

In my opinion, since the defendant's license has fully merged into his practice, the majority incorrectly engrafts the license-valuing methodology of enhanced earning capacity onto the methodology used in valuing a practice. Where there has been a subsequent merger of a degree, skill or license into a career, profession or business, then there no longer should be a separate valuation of the degree, skill or license *(see, DiCaprio v DiCaprio,* 162 AD2d 944, 946 [Lawton, J., dissenting] [decided herewith]). Since Supreme Court, in accordance with the evidence submitted by the parties, has properly determined and distributed the value of defendant's practice, I would affirm. (Appeal from judgment of Supreme Court, Onondaga County, Stone, J.—divorce.) Present—Dillon, P. J., Doerr, Green, Lawton and Lowery, JJ.