OPINION OF THE COURT
W. Denis Donovan, J.
Upon trial in this matrimonial action, the evidence before the court established that the parties were married in February 1981 and have two children, a boy eight years old and a girl six years old. The parties are in their mid-to-late thirties and they and the children are in good health. Before mar *738 riage, the defendant had already obtained his medical license and had begun practice in a short-lived and incompleted surgical residency; the plaintiff had already received her Master’s degree in art and recreation therapy. The parties separated in early 1984 and plaintiff began this action in April 1987.
EQUITABLE DISTRIBUTION
The only other possible marital asset is defendant’s enhanced earnings based on plaintiff’s claim that defendant, during the course of the marriage, acquired the work-time and credit prerequisites to take the certification examination of the American Board of Emergency Medicine without need to undergo a new or separate residency.
In the seminal equitable distribution case decided by the New York State Court of Appeals, O’Brien v O’Brien (66 NY2d 576), the high court held that only two classes of property were statutorily recognized and defined: marital property and separate property (Domestic Relations Law § 236 [B] [1] [c], [d]). It noted that "marital property” was broadly defined under section 236 (B) (1) (c) as " 'all property acquired by either or both spouses during the marriage * * * regardless of the form in which title is held’ ” (supra, at 583; emphasis in original). Against the plaintiff’s argument in that case that his newly acquired medical license was solely a personal attainment in acquiring knowledge and not property at all in any common-law sense, the court held that the Legislature had purposely gone beyond traditional property concepts when formulating the Equitable Distribution Law and that the medical license was indeed "marital property”, as defined, and therefore subject to distribution. It noted: "Section 236 provides that in making an equitable distribution of marital property, 'the court shall consider: * * * (6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party [and] * * * (9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession’ (Domestic Relations Law § 236 [B] [5] [d] [6], [9] [emphasis added]). Where equitable distribution of marital property is appropriate but 'the distribution of an *739 interest in a business, corporation or profession would be contrary to law’ the court shall make a distributive award in lieu of an actual distribution of the property (Domestic Relations Law § 236 [B] [5] [e] [emphasis added]). The words mean exactly what they say: that an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family. ” (Supra, at 584 [additional last emphasis added].)
In the instant case, there is no question that defendant earned his license with the attendant right to practice general medicine months prior to the marriage of the parties in February 1981. He had not, however, acquired any significant specialty skills up to then. During the marriage, he did acquire such specialty skills and credits in emergency room medicine to enable him well before commencement of this action to sit for the certification examination in this new specialty without the later-installed (and present) requirement to undergo a formal residency. That he has not sat to date and speculation over whether he would pass the examination if he did, need not be of direct concern to the court at present because what plaintiff is claiming to be the marital asset is the already enhanced earning capacity that defendant has come to enjoy without the further benefit of formal certification which would lead to even further but unclaimed enhancement of his earnings. In other words, claim is made to the present difference between the lifetime earning capacity of defendant as a general practitioner (at best) before the marriage and the enhanced lifetime earning capacity of an experienced emergency room practitioner without certification that defendant actually came to enjoy before the commencement of this action and which he continues to enjoy. The court agrees with this claim. Such an argument is not so far a stretch of O’Brien (supra) principles as defendant contends. The Court of Appeals there observed as earlier quoted, that it is not only the "career” but the "professional career potential” (supra, at 584 [emphasis added]), that is marital property.
This view is further aided by recent appellate holdings that when various separate properties have appreciated due to the efforts of the titled spouse, whose efforts were aided, directly or indirectly, by the nontitled spouse, the resulting appreciation is deemed a martial asset subject to equitable distribution. (Price v Price, 69 NY2d 8 [business holdings]; Lipan v *740 Lipan, 160 AD2d 201 [taxi medallion]; Vogel v Vogel, 149 AD2d 901 [a childhood stamp collection].) Were the higher earnings of the defendant here merely the passive increments of salary allocable to time passage and experience generally, the court might be able to agree with defendant (but even then, see, Robinson v Robinson, 166 AD2d 428 [2d Dept]). The evidence adduced at trial through the testimony of plaintiff’s medical and actuarial witnesses contrasted the recent earnings of a general practitioner ($88,000 per year) to the recent earnings of an eligible or board-prepared emergency medicine specialist ($95,000 to $105,000 per year). This latter range is, in fact, actually reflected by defendant’s salary and there is no credible evidence that defendant would ever be forced out of such specialty employment by the formal lack of certification. Again, there was no attempt by plaintiff to utilize the more lucrative earning potential of an actually certified specialist ($110,000 to $125,000 per year).
The plaintiff’s valuation expert took the 1987 earnings of defendant (the time of commencement of the action) and the 1987 average earnings of a general practitioner and brought both figures up to the analysis year, i.e., adjusted both to 1990 levels. In the former instance, this was accomplished by utilizing the actual $104,500 salary of defendant in 1990. In the latter instance, except perhaps for consistency, the method and reason for bringing the general practitioner’s average 1987 salary up to $88,000 level for 1990 analysis is not otherwise clear but the court may infer from the witness’ written computation that a proper increase percentage was applied. Certainly, no cross-examination was made on the point and it may be assumed that no prejudice to defendant resulted, for the bringing up was applied to both salaries. More importantly, and properly so, defendant’s greater age in 1990 was utilized by plaintiff’s expert in extrapolating both streams of income to age 65 thus shortening the comparison to fewer productivity years which seemingly enures to defendant’s benefit.
According to the report in evidence and the witness’ testimony, both streams of income, reflecting an initial difference from each other of $16,500, were run for 27 years or defendant’s attainment of age 65. For each of these years and for both streams of income, maximum tax liability was deducted from gross salaries increased by 4.76% for inflation; this is lower than the regional inflation rate of 5.5% and also lower than the recent history of average growth rate for doctors’ *741 earnings generally. The accumulated salaries in both streams were next discounted for present value by a rate of 8.39%, a rate chosen as that for a generally safe 30-year Treasury bond. The resulting amounts, i.e., $1,097,183 for defendant and $923,944 for the general practitioner, were subtracted from each other leaving $173,239 as the present value of defendant’s enhanced earning capacity to age 65. Finally, since defendant has only a 79% statistical chance of reaching 65 years, the bottom-line present value of enhanced earning capacity was discounted to cover that probability and thus, the final difference was found to be approximately $136,860 which represents the final figure for distribution.
It next falls to determine what portion, if any, of these moneys, reflective of defendant’s present value enhanced earning capacity garnered during the course of the marriage, should be awarded to plaintiff. As mentioned above, after a year and a half or so of marriage, plaintiff discontinued her full-time employment as an art therapist in a nursing home due to the birth of the parties’ older child in November 1982. Since then, as the eventual mother of two, she has substantially devoted herself to homemaking and child-rearing with only part-time on-and-off work in her unsuccessful and costly ceramics and pottery endeavors. Her Master’s degree in art therapy has only most recently been resurrected with part-time employment in a nursing home. The children have done well in school and defendant has largely conceded that plaintiff was a good mother and caretaker during their years together. It was during this same period that defendant attained the skills and credits that have made him eligible to sit for specialty certification without need of a residency. While certification would undoubtedly permit him to command a higher salary than present, it is again pertinent to note that the enhanced earnings computation above was based on present salary, thus avoiding speculation whether he ever will, in fact, sit for and pass the specialty examination. Based on the above and following the required concept of viewing the marriage as an economic partnership, the court deems an award to plaintiff of 40% of the final present value enhanced earning figure, $136,860, to be appropriate. This amounts to $54,744 and, allowing for three years’ legal interest to present date, less one third for taxes otherwise due on such interest, the court finds that plaintiff is currently entitled to $64,600.