OPINION OF THE COURT
 

 Titone, J.
 

 In
 
 O’Brien v O’Brien
 
 (66 NY2d 576), this Court held that a professional license acquired two months before the commencement of the matrimonial action was marital property subject to equitable distribution under Domestic Relations Law § 236 (B). Since that decision, the courts of this State have struggled with the problems involved in distributing the value of older professional licenses that have been utilized in the development of their holders’ careers. The primary question presented by this appeal is whether a license that has been exploited by the licensee to establish and maintain a career may be deemed to have "merged” with the career and thereby lost its character as a separate distributable asset.
 

 L
 

 The parties were married in 1969. At the time of their marriage, both parties had undergraduate college degrees and neither possessed any appreciable assets. Defendant husband attended law school during the first three years of the marriage, gaining admission to the Bar in 1973. He thereafter practiced law and was earning an annual salary of $97,000 as a Deputy First Assistant Attorney-General when the parties separated in mid-1989.
 

 Plaintiff wife acquired a master’s degree in psychology during the early years of her marriage. Over the next 12 to 13 years, she worked as a school psychologist, taking time off occasionally to care for the couple’s children or to attend graduate school. In 1984, plaintiff began attending medical school. She graduated in 1988 and, after completing a one-year internship, she received a license to practice medicine in July of 1989. Plaintiff commenced this matrimonial action on September 1, 1989, four months before the completion of her second internship.
 

 
 *280
 
 By a judgment of divorce dated October 1,1991, the Supreme Court awarded each party custody of one of the couple’s two children. Defendant was ordered to pay child support and weekly maintenance and the marital property was divided equally between the parties. In determining the total value of the marital estate, the court included the value of each party’s professional license as measured by the increased earning capacity it represented: $529,363 for defendant’s law license and $903,406 for plaintiffs medical license. The marital estate was then divided so that each party retained the value of his or her license and pension interest. The marital residence was to be sold and the proceeds distributed equally. The other marital assets, including vehicles, investments and vacation property were also distributed. Both parties then appealed from the portions of the judgment that they deemed objectionable.
 

 The Appellate Division modified in several important respects. On defendant’s appeal, the Court held that defendant’s law license should not have been treated as separate marital property available for equitable distribution because it had "long since merged into [defendant’s] professional career” and was not " 'an asset * * * possessing] an independent identity for the purpose of computing appreciation’ ” (190 AD2d 74, 81, quoting
 
 Kalisch v Kalisch,
 
 184 AD2d 751, 752). Several of plaintiffs arguments regarding the distribution of marital property were rejected, but the Court agreed with her contention that her medical license had been overvalued. Based on these and other perceived problems in the divorce judgment, the Appellate Division reversed and remitted to the Supreme Court for a redistribution of the marital assets as well as for a modification of the conditions imposed in connection with defendant’s visitation rights.
 

 On the remand, Supreme Court redistributed the marital property in accordance with the Appellate Division’s decision. The court also granted a defense motion to eliminate defendant’s prospective maintenance because of his recent job loss. Defendant had applied for relief from his maintenance obligation during the pendency of the appeal to the Appellate Division after plaintiff had appeared at a press conference and accused him of engaging in criminal activity. The acknowledged purpose of this press conference was to embarrass defendant’s employer, the then-State Attorney-General, who was campaigning for a different office. As a result of these accusations, defendant was forced to resign from his position and had been unable to find new employment. The court found that defendant’s
 
 *281
 
 job loss was not a self-imposed hardship and that, in view of plaintiff’s current annual income, defendant should not be obliged to continue paying her maintenance. Plaintiff then took a second appeal.
 

 On that appeal, the Appellate Division affirmed, rejecting plaintiffs contentions regarding the elimination of her maintenance and the purported one-sidedness of the redistribution of marital property. The Court also declined either to exclude plaintiff’s medical license from the marital estate or to reconsider its earlier conclusion that defendant’s law license was improperly included. Plaintiff took the present appeal by permission of this Court.
 

 IL
 

 Initially, we reject plaintiff’s arguments regarding the inclusion of her own medical license as an item of marital property available for equitable distribution. Contrary to plaintiff’s contentions, nothing that has occurred in the 10 years since
 
 O’Brien
 
 was decided suggests a reason to overrule it. The "chaos” and "confusion” that plaintiff perceives are really nothing more than reflections of how difficult it is to achieve true fairness in the division of a married couple’s tangible and intangible assets. Far from undermining O’Brien’s pragmatic and theoretical worth, the decade of case law history that plaintiff cites is an example of the kind of experimentation and creative problem solving that the Domestic Relations Law and equity itself demand.
 

 Equally unpersuasive is plaintiff’s contention that
 
 O’Brien
 
 should be limited to cases in which one spouse worked and supported the family financially while the other went to school and earned a professional license. Plaintiff’s emphasis on the nontitled spouse’s financial subsidy to the exclusion of all other forms of contribution represents an unacceptably narrow view of the economic partnership that characterizes the institution of marriage. Here, for example, although defendant apparently did not finance plaintiff’s medical education, he was the primary provider of economic support to the family while plaintiff was in school. Additionally, he prepared family meals and tended to the children’s needs so that plaintiff could devote her time to her studies and work. Thus, the evidence supports the affirmed finding below that defendant "contributed to the functioning of the household while plaintiff attended medical school.” Under these circumstances, inclusion of plaintiff’s license as an item of distributable marital property is appropri
 
 *282
 
 ate to fulfill the core purpose of the
 
 O’Brien
 
 rule: to assure the nontitled spouse an equitable share of the license to which that spouse’s efforts contributed. Accordingly, there is no sound basis for withholding
 
 O’Brien’s
 
 application here. We note that, contrary to plaintiff’s contentions, there is also record support for the Appellate Division’s valuation of her medical license. Consequently, the lower courts’ distribution of plaintiff’s professional license will not be disturbed.
 
 *
 

 IIL
 

 We reach a different conclusion, however, with respect to the Appellate Division’s disposition of defendant’s professional license to practice law. As a threshold matter, we reject plaintiff’s contention that the Appellate Division lacked the power to modify Supreme Court’s decision to distribute the license’s value because defendant did not specifically mention that aspect of the judgment in his notice of appeal. Contrary to plaintiff’s contentions, the scope of the Appellate Division’s review power was not limited by the recitations in defendant’s notice of appeal. Notably, there is no indication on this record that plaintiff was prejudiced by any ambiguity or omission in the notice. Accordingly, there is no basis for this Court to interfere with the Appellate Division’s discretionary choice to construe defendant’s notice of appeal liberally or even to reach beyond the issues it cited.
 

 Turning to the substantive question, we find considerable merit in plaintiff’s contention that the Appellate Division erred in treating defendant’s law license as having "merged” with defendant’s career. The "merger” principle on which the Court’s decision was based is derived from the Second Department’s ruling in
 
 Marcus v Marcus
 
 (137 AD2d 131), in which it was held that a professional license should not be assigned an independent value where the licensee has maintained a professional practice for a substantial period. In that situation, the
 
 Marcus
 
 Court stated, the license "should be deemed to have merged with and been subsumed by the practice itself’
 
 (id.,
 
 at
 
 *283
 
 139). The underlying rationale is that "the equitable considerations that * * * motivated the
 
 O’Brien
 
 court are fundamentally different” where the license has been utilized for a substantial period to establish a career or professional practice and to generate tangible assets for the family
 
 (Parlow v Parlow,
 
 145 Misc 2d 850, 856;
 
 see, Maher v Maher,
 
 196 AD2d 530, 531).
 

 In the years since the merger theory was first articulated, the lower courts of this State have applied it with varying results. While the theory has repeatedly been reaffirmed
 
 (see, e.g., Duffey v Duffey,
 
 198 AD2d 581;
 
 Maher v Maher, supra,
 
 at 531;
 
 Kalisch v Kalisch, supra; McGowan v McGowan,
 
 142 AD2d 355, 359, n;
 
 Madori v Madori,
 
 151 Misc 2d 737,
 
 affd
 
 201 AD2d 859;
 
 Vanasco v Vanasco,
 
 132 Misc 2d 227;
 
 but see, Holihan v Holihan,
 
 159 AD2d 685), the courts have also found it necessary to make significant modifications to address the myriad of situations in which the problem of matured professional licenses has arisen. In
 
 Shoenfeld v Shoenfeld
 
 (168 AD2d 674), for example, the Second Department upheld the lower court’s holding that a two-year-old practice was too new to have subsumed the underlying professional license. Similarly, in
 
 Phelps v Phelps
 
 (199 AD2d 608, 609), the Third Department held that it was not error to assign separate distributable value to a medical license that had been in use for seven years because the licensee had made several changes in the form of his practice and his earnings had not yet "stabilized sufficiently to permit a valuation of his practice which would truly reflect the increased earning capacity [attributable to his] license.” In
 
 Aborn v Aborn
 
 (196 AD2d 561), the Second Department declined to apply the merger rule to a spouse’s professional license where the licensee had dissolved what had once been a profitable professional partnership and had relocated his practice several times.
 

 In yet another approach to the problems created by professional mobility, the lower courts have held that a license which has previously "merged” with a professional career or practice may "reemerge” as a significant and separately distributable asset if the licensed spouse experiences a significant career change. This principle was applied where the licensed spouse sold a long-standing medical practice and opened a new one in another State
 
 (Behrens v Behrens,
 
 143 AD2d 617;
 
 cf., Marano v Marano,
 
 200 AD2d 718) and where a spouse with a law license terminated his career as a United States Congressman shortly after the matrimonial action was commenced
 
 (Martin v Martin,
 
 
 *284
 
 200 AD2d 304). It was also applied, in combination with the
 
 Shoenfeld-Phelps-Aborn
 
 exception, where a licensed attorney who had worked as a law assistant for 10 years switched to private practice and the four-year history of that practice did not "warrant the finding” that the practice had subsumed the license
 
 (Wells v Wells,
 
 177 AD2d 779, 780).
 

 Yet another variant of the merger rule was applied by the Fourth Department in
 
 Finocchio v Finocchio
 
 (162 AD2d 1044) and
 
 DiCaprio v DiCaprio
 
 (162 AD2d 944). The Courts in those cases acknowledged the applicability of the merger principle but treated the enhanced earning power associated with a spouse’s professional license as a marital asset anyway. Over a vigorous dissent, the
 
 Finocchio
 
 majority reasoned that the merger principle should not be applied "in a way which would deprive the nonlicensee spouse of * * * any interest [in] the marital asset beyond commencement of the matrimonial action” (162 AD2d, at 1045). Accordingly, while the spouse’s professional license had "merged” into his career, that conclusion meant only that the method for valuing the license "must include a projection of the licensee’s future earnings 'based on actual past earnings produced by actual practice’ ”
 
 (id.,
 
 at 1046, quoting
 
 McGowan v McGowan, supra,
 
 at 359, n;
 
 accord, DiCaprio v DiCaprio, supra,
 
 at 945). In other words, under
 
 Finocchio
 
 "the only effect of the merger is that the court uses the owner’s actual earnings to compute the [license’s] value instead of using the projected earnings of the average professional” (Turner, Equitable Distribution of Property § 6.19A, at 227 [1993 Cum Supp]).
 

 Although the
 
 Finocchio
 
 approach has much merit, it is ultimately flawed because of its continued reference to the concept of "merger.” As is evident from the case law, the use of that term injects an artificial and unnecessarily confusing element into an already difficult assessment process.
 

 One objection to the concept of "merger” is that it rests on the notion that an unrevoked professional license can somehow lose its character as a component of marital property solely because of its use in advancing its holder’s career. If, as we held in
 
 O’Brien,
 
 a currently valid professional license is a distributable item of economic value, it should logically retain that quality throughout its existence. It would be anomalous to
 
 suggest
 
 that a marital asset may "merge” or disappear and perhaps even "reemerge” or reappear depending on the vicissitudes of the licensee’s professional career
 
 (cf.,
 
 Oldham, Divorce, Separation and Distribution of Property § 9.02 [l]j at
 
 *285
 
 9-11 ["(i)t would be Alice-in-Wonderlandish to say that education is property only sometimes”]).
 

 A second objection to the "merger” theory is that it is difficult to apply. Even the doctrine’s simplest application is problematic, since there can be no clear yardstick for measuring when the licensee’s practice or career has matured to the point where it has "subsumed” the license
 
 (see,
 
 Scheinkman, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 236, C236B:6, at 40 [1995 Cum Ann Pocket Part]). The doctrine’s proper use becomes even more confusing when it is applied to the many situations in which the licensee has experienced career reversals, has opted to change professional direction or has simply selected a career that does not "square up exactly” with the scope of the license
 
 (id,.,
 
 at 40-41).
 

 Finally and most fundamentally, the merger doctrine is flawed because its practical effect is to limit the
 
 O’Brien
 
 rule’s application to recently acquired licenses
 
 (see, DiCaprio v DiCaprio, supra,
 
 at 946-948 [Lawton, J., dissenting];
 
 Marcus v Marcus, supra,
 
 at 139). Such a narrow approach is inconsistent with the equitable goal of assuring both spouses a fair share of all of the assets that were produced by the marital partnership. Application of the merger doctrine is particularly inimical to the statutory purposes because it generally favors the nonlicensed spouse in a shorter marriage over the nonlicensed spouse who is faced with rebuilding his or her economic life after the breakup of a long-term marriage
 
 (see,
 
 Scheinkman,
 
 op. cit.,
 
 C236B:6, at 40 [1995 Cum Ann Pocket Part]).
 

 In view of these logical and practical difficulties, we conclude that the letter and spirit of our holding in
 
 O’Brien
 
 is best served by eliminating the concept of "merger” from the inquiry. The merger doctrine should be discarded in favor of a commonsense approach that recognizes the ongoing independent vitality that a professional license may have and focuses solely on the problem of valuing that asset in a way that avoids duplicative awards.
 
 O’Brien
 
 permits the court to include in the marital estate the present value of any increased earning capacity attributable to a professional license earned during the marriage. That increased earning capacity continues to exist, to a greater or lesser degree, throughout the life of the license. Even after the licensee has had the time and opportunity to exploit the license and to realize a portion of the enhanced earning potential it affords, the license itself retains some residual economic value, although in particular cases it
 
 *286
 
 may be nominal
 
 (see,
 
 Turner,
 
 op. cit.,
 
 at 227-228). That value can be measured and distributed just as a newly acquired license is valued through various actuarial techniques that are well known to valuation experts.
 

 • To be sure, the valuation inquiry is made more complicated by the passage of time and the licensee’s harvesting of some portion of the enhanced earning capacity that accompanies the license. The value of a newly earned license may be measured by simply comparing the average lifetime income of a college graduate and the average lifetime earnings of a person holding such a license and reducing the difference to its present value
 
 (see, O’Brien v O’Brien, supra,
 
 at 582; 2 McCahey, Valuation & Distribution of Marital Property § 30.03 [3], at 30-19 — 30-21). In contrast, where the licensee has already embarked on his or her career and has acquired a history of actual earnings, the foregoing theoretical valuation method must be discarded in favor of a more pragmatic and individualized analysis based on the particular licensee’s remaining professional earning potential
 
 (see, Finocchio v Finocchio, supra,
 
 at 1045-1046; Scheinkman,
 
 op. cit.,
 
 C236B:6, at 48 [1995 Cum Ann Pocket Part]). Moreover, care must be taken to ensure that the monetary value assigned to the license does not overlap with the value assigned to other marital assets that are derived from the license such as the licensed spouse’s professional practice. The courts must also be meticulous in guarding against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses.
 

 The existence of these complications, however, is not a sound reason to introduce nettlesome legal fictions or to excise an asset to which the nontitled spouse has contributed from the marital estate. As we stated in
 
 O’Brien,
 
 the complexity of calculating the present value of a partially exploited professional license is no more difficult than the problem of computing wrongful death damages or the loss of earning potential that is occasioned by a particular injury (66 NY2d, at 588). Nor does it lead to significantly more speculation than is involved in the now-routine task of valuing a professional practice for the purpose of making a distributive award
 
 (see, id.,
 
 citing
 
 Arvantides v Arvantides,
 
 64 NY2d 1033;
 
 Litman v Litman,
 
 93 AD2d 695,
 
 affd
 
 61 NY2d 918;
 
 see also, Burns v Bums,
 
 84 NY2d 369, 376-377).
 

 IV.
 

 In this case, no distributive award representing the value of defendant’s law license was made because of the Appellate
 
 *287
 
 Division’s prior ruling that the license had merged with defendant’s legal career. This ruling was error, since the license had a residual economic value independent of defendant’s career. Accordingly, the matter must be remitted to the Supreme Court so that a new distribution of the marital assets taking into account the value of defendant’s law license, can be made. Notably, the question of valuation will probably have to be tried de nova, since it appears that the experts’ assessments and the Supreme Court’s initial valuation determination were made without compensating for the portion of the enhanced earning capacity attributable to the license that has already been realized through defendant’s legal career
 
 (see,
 
 Turner,
 
 op. cit.,
 
 at 227-228). However, a full de nova inquiry into the other distributive issues is not necessary, since those issues have already been resolved in prior proceedings and, as noted elsewhere in this opinion, we find no basis to disturb their disposition in the courts below.
 

 Inasmuch as there must be a new trial on this narrow point, we turn briefly to the question of whether the trial court may consider the postcommencement events that may have affected the value of defendant’s license. Of course, the most significant of these is defendant’s 1992 job loss, which was caused in part by what the Appellate Division characterized as plaintiff’s " 'acrimonious and vindictive conduct’ ” (208 AD2d, at 837).
 

 Domestic Relations Law § 236 (B) (1) (c) provides that the classification of property as "marital” or "separate” is governed by the date on which the matrimonial action was commenced or the parties’ separation agreement executed. However, the equitable distribution statute does not specify the date that is to be used as the touchstone for measuring the value of the marital property
 
 (see,
 
 Scheinkman,
 
 op. cit.,
 
 C236B:26, at 287). Thus, the appropriate date for measuring the value of marital property has been left to the sound discretion of the trial courts, which should make their determinations with due regard for all of the relevant facts and circumstances
 
 (see,
 
 Domestic Relations Law § 236 [B] [4] [b]).
 

 In attempting to select a suitable valuation date, some courts have drawn a distinction between "active” assets (i.e., those whose value depends on the labor of a spouse) and "passive assets” (i.e., those whose value depends only on market conditions). These courts have concluded that "active” assets should be valued only as of the date of the commencement of the action, while the valuation date for "passive” assets may be determined more flexibly
 
 (see, Smerling v Smerling,
 
 177 AD2d
 
 *288
 
 429;
 
 Heine v Heine,
 
 176 AD2d 77;
 
 Zelnik v Zelnik,
 
 169 AD2d 317;
 
 Kallins v Kallins,
 
 170 AD2d 436;
 
 Greenwald v Greenwald,
 
 164 AD2d 706). Such formulations, however, may prove too rigid to be useful in particular cases. Thus, they should be regarded only as helpful guideposts and not as immutable rules of law
 
 (see generally,
 
 Scheinkman,
 
 op. cit,
 
 C236B:26, at 79-80 [1995 Cum Ann Pocket Part]).
 

 Here, for example, defendant’s law license would probably be classified as an "active” asset in the lower courts’ taxonomy. Yet, one of the apparent goals of using the date of the action’s commencement for measuring the assets’ worth, i.e., preventing the licensed spouse from unilaterally manipulating the asset’s value, may not be relevant in this case, where the actions of the nonlicensed spouse may have undermined the license’s residual economic value.
 

 In the final analysis, whether the unusual postcommencement events that led to defendant’s job loss should be considered in assessing the residual value of his law license is a question that lies squarely within the trial court’s discretion. We hold only that the timing of these events should not by itself be a legal impediment to such consideration.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to appellant, and the case remitted to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Ciparick concur; Judge Levine taking no part.
 

 Order modified, etc.
 

 *
 

 Plaintiff has also argued that the bulk of the marital estate should have been awarded to her because a considerable portion of it was derived from gifts from plaintiff’s parents. However, the courts below both found that the gifts in question were given with an intent to benefit the parties equally and were therefore properly included as marital property. This conclusion, as well as the Supreme Court’s affirmed rulings with respect to defendant’s maintenance obligation and the distribution of certain bonds, were supported by the record and thus there is no basis for this Court to intervene.