OPINION OF THE COURT
David B. Saxe, J.
The parties to this matrimonial action seek a pretrial ruling on how to determine, for purposes of equitable distribution, the value of the plaintiffs interest in the law firm in which he was a partner at the time the action was commenced.
*1018 The difficulty here is that the firm, Townley & Updike, was dissolved subsequent to the start of this action, and Mr. Raskopf thereafter, in February 1995, became a member of White & Case.
In the course of discovery a court-appointed expert valued plaintiffs interest in Townley & Updike, as of September 30, 1994, at approximately $200,000-$260,000 (although the briefs submitted here indicate that the parties then agreed on the sum of $150,000 as the commencement date value). Mr. Raskopf now takes the position that as a matter of law the valuation of his interest in Townley & Updike must be as of the date of trial, and due to the firm’s dissolution, that interest must be zero.
For her part, Mrs. Raskopf insists that the commencement date value of Townley & Updike remains appropriate. The parties’ stipulation also seeks a ruling on whether Mrs. Raskopf is entitled to a percentage of Mr. Raskopf s partnership interest in White & Case.
Mr. Raskopf protests that the value attributed to his interest in Townley & Updike has been proven to be incorrect by subsequent events, and that when a professional practice has no value, the court may not distribute that asset. However, the cases he cites are not controlling here. For instance, in Rivera v Rivera (206 AD2d 970), the husband had already been suspended from the practice of law when the divorce action was commenced.
Furthermore, Kaufman v Kaufman (207 AD2d 528 [2d Dept 1994]) is also not controlling. The Kaufman case concerned a 20-year marriage, and the trial court found that the husband’s license to practice law had merged into his law practice, which the court then termed "defunct” and valued at $5,000 (207 AD2d, at 529, supra). The only additional information contained in the decision is that the husband was an associate, rather than a partner, in a law firm, by the time the court granted a divorce. It is not clear from the decision that at the start of the Kaufman action, the husband had an interest in a partnership which subsequently became "defunct”.
More importantly, the recent decision by the Court of Appeals in McSparron v McSparron (87 NY2d 275) has fundamentally altered the law as it was applied in Kaufman (supra), by doing away with the "merger doctrine”.
Mr. Raskopfs situation is distinguishable from that in Mc-Sparron (supra) because his degree and license were acquired *1019 prior to the marriage, and Mrs. Raskopf would not be entitled to a share of the value of the license or degree. However, he did stipulate that Mrs. Raskopf should be entitled to a 50% share of his law partnership, as valued at trial. In view of that stipulation acknowledging her contribution to that asset, the court must diligently protect the wife’s right to distribution of that admittedly marital asset, and should only conclude that the practice is valueless if that assertion is clearly proven by a preponderance of the evidence, as it was in Bidwell v Bidwell (122 AD2d 364 [3d Dept 1986]). It is even stipulated here that Mr. Raskopf has not presented evidence demonstrating that the Townley & Updike partnership has no value.
A valuation date must be tailored to the facts of the case, in order to best provide for the equitable distribution of the marital partnership (see, Wegman v Wegman, 123 AD2d 220 [2d Dept 1986]). Mr. Raskopf suggests that any time the value of a business interest or a professional practice changes as a result of economic forces beyond the parties’ control, the assets should be valued as of the date of trial. However, the cases he relies upon do not contain such broad holdings.
First of all, it cannot be assumed that the dissolution of the firm demonstrates that it has no value. A profitable partnership can be dissolved as well as a bankrupt one (see, Aborn v Aborn, 196 AD2d 561 [2d Dept 1993]).
Of greater import here, the McSparron decision also pointed out that "[s]uch formulations” as the rules regarding "active” and "passive” assets "should be regarded only as helpful guideposts and not as immutable rules of law” (McSparron v McSparron, 87 NY2d, at 288, supra). In that case, the husband was a Deputy Assistant Attorney-General who was terminated from his employment during the divorce, in part due to the wife’s acrimonious and vindictive conduct. Commenting on the issue of whether these postcommencement events could be considered in valuing the husband’s license to practice law, the Court noted that if the passive-active dichotomy were applied, the husband’s law license would probably be classified as an "active” asset, which would lead to a use of the commencement date value. The Court then indicated that such rigid application of rules was inappropriate: "In the final analysis, whether the unusual postcommencement events that led to defendant’s job loss should be considered in assessing the residual value of his law license is a question that lies squarely within the trial court’s discretion. We hold only that the timing of these events should not by itself be a legal impediment to such consideration.” (87 NY2d, at 288, supra.)
*1020 The decision of how to arrive at the valuation date of Mr. Raskopfs law practice therefore cannot be determined simply by deciding whether it is a passive or an active asset; however, the theoretical underpinnings of those rules are appropriate to consider.
The "passive/active” analysis defines "passive assets” as assets "which appreciate in value strictly as a result of random market fluctuations or the efforts of others”, and holds that "Passive assets should generally be valued as of the trial date so as to prevent a windfall to the titled spouse if the asset has increased in value” (Greenwald v Greenwald, 164 AD2d 706, 716 [1st Dept 1991] [emphasis added]). That rationale is not directly applicable where an asset has decreased in value. Of course, if through no fault of the parties a marital asset has simply evaporated prior to trial, like an uninsured house which has burned down, the court would normally take into account the current circumstances, and not grant a distributive award of an asset that no longer existed, in any form (see, Bidwell v Bidwell, 122 AD2d 364, supra). But, other circumstances may lead a court to adopt and distribute a value of an asset, despite its apparent nonexistence: for instance, if the titled party is guilty of decreasing the value of the asset, or if the value inherent in the marital asset had not exactly disappeared, but rather had changed form.
Upon considering the value of Mr. Raskopfs interest in Townley & Updike, the dissolution of Townley & Updike does not render that asset the equivalent of a marital asset which has evaporated.
There are many ways a professional practice can be valued. In New York the courts often look to the terms of a law firm’s partnership agreement, sometimes using the agreement’s provisions for benefits upon withdrawal, sometimes using the death benefit provision (see, e.g., Anonymous v Anonymous, 222 AD2d 305; Harmon v Harmon, 173 AD2d 98 [1st Dept 1992]; Rosenberg v Rosenberg, 145 AD2d 916, 919 [4th Dept 1988]). They have also approved of an "excess earnings” approach to valuation, by which method tangible assets are added to goodwill (see, Finocchio v Finocchio, 162 AD2d 1044 [4th Dept 1990]). Even though this court is not now determining the value of Mr. Raskopfs law practice, the variety of options is relevant here because the newly developed circumstances show that notwithstanding the dissolution of Townley & Updike, Mr. Raskopfs practice may be said to have retained a value. This is demonstrated by his having been invited to join White & *1021 Case, which circumstance would only have happened upon proof that Mr. Raskopf had a substantial client base. Having a substantial client base is simply another way of saying "goodwill”, a term defined to mean the probability of repeat patronage by clients or access to a regular clientele (see, Brown, Legal Controversies In Valuing Law Practices: Case Review, Valuing Professional Practices and Licenses: A Guide for the Matrimonial Practitioner, ch 9, at 9-12 [2d ed]).
The ruling I am asked to make here is limited to the issues of the correct valuation date, and whether Mr. Raskopf s interest in White & Case is distributable.
I reject outright the suggestion that Mr. Raskopf s practice be valued as of the date of trial, and determined to be valueless; such a result would be inequitable and would not comport with the undisputed facts as presented. In contrast, the valuation as of the date of commencement is the more just and appropriate.
However, since the foregoing analysis relies on the conclusion that Mr. Raskopfs practice has been shown to have a goodwill value of its own, it would be appropriate to obtain a confirmatory valuation of his practice at White & Case, in order to determine whether the date-of-commencement value was in line with the actual value of his practice, as the move to White & Case demonstrated it to be. This is not to say that the value of Mr. Raskopf s interest in White & Case is distributable, but rather, that the value of the business he brings to that firm can be seen as confirming the value of his practice at Townley & Updike.