[641 NYS2d 779]

Sᴀʀᴀʜ Wᴀᴅsᴡᴏʀᴛʜ, Respondent-Appellant, v Jᴀᴍᴇs Wᴀᴅs-
ᴡᴏʀᴛʜ, Appellant-Respondent. (Appeal No. 1.)

Fourth Department, April 19, 1996

## APPEARANCES OF COUNSEL

*Sullivan, Benatovich, Oliverio & Trimboli,* Buffalo *(Richard Sullivan* of counsel), for appellant-respondent.

*Barbara Ellen Handschu,* Buffalo *(Paul J. Birzon* of counsel), for respondent-appellant.

## OPINION OF THE COURT

DAVIS, J.

The primary questions presented on this appeal from a judgment of divorce are whether Supreme Court properly valued defendant's law practice and properly declined to value separately defendant's law license. We conclude that the court erred in both respects.

I

The parties were married on August 26, 1961. At the time of their marriage, each had recently received an undergraduate college degree. During the first three years of the marriage, defendant attended Stanford University Law School. Upon his graduation from law school and his admission to the New York Bar, defendant was hired as an associate at a Buffalo law firm, Hodgson, Russ, Andrews, Woods & Goodyear. In 1969 he

became a junior partner in that law firm and in 1972 he became a general partner. As of the date on which this action was commenced, defendant was the law firm's managing partner in charge of administration and management. He earned $228,000 in 1992. Additionally, he testified at trial that, as of 1992, he had a stock portfolio worth $13,336.32, had an interest in the Buffalo Sabres hockey team worth $85,000 and had a law firm pension worth $180,993.09. In addition, he testified that he had an IRA account worth $61,654.73 and a 401K plan worth $134,802.10.

Plaintiff worked full time during the first two years of the parties' marriage, until the birth of the first of the parties' four children. In 1981 she received her Master's degree in social work from the State University of New York at Buffalo and she was thereafter employed full time in various jobs from 1981 until January 1990, when she ceased working of her own volition.

As of 1992, plaintiff had a stock portfolio valued at approximately $449,000, which produced an annual income of approximately $21,000. In addition, in 1992 she received income of approximately $15,000 as the beneficiary of a trust established under the will of a grandparent and a $20,000 gift from her father. Plaintiff is the beneficiary of two irrevocable trusts and expects to receive an inheritance of approximately $1.2 million upon her father's death.

Both parties testified at trial that their marriage was a true economic partnership. The parties had a high standard of living throughout their 30-year marriage. They sent their four children to private schools, from grade school through college. The family enjoyed many expensive vacations and had memberships in several social clubs. The parties own three homes—the marital residence in Buffalo, a summer home in Thunder Bay, Ontario, Canada, and a vacation home in Jackson Hole, Wyoming.

The court, largely crediting the testimony of plaintiff's expert, concluded that the value of defendant's interest in the law practice as of the date of the commencement of the action was $621,663 and made a distributive award to plaintiff of 50% of that amount. In determining the value of defendant's law practice, the court utilized the death benefit provision of the law firm's partnership agreement; that provision provides for the payment of an amount equal to the deceased partner's capital account and share of the accounts receivable, plus an amount equal to the deceased partner's average salary for the

five years immediately preceding death [$189,920] less an amount equal to "two times the amount by which the amount of group term life insurance on the life of the deceased partner * * * exceeds $270,000 [$180,000]". The court subtracted the "Dome Project" receivable, or $46,596, from the death benefit provision, and then added a $360,000 group term life benefit.

The court declined to value separately defendant's law license, finding that the requirement set forth in *Finocchio v Finocchio* (162 AD2d 1044) to value separately a law license was inapplicable because, "[f]irst, there was no partnership agreement valuation basis involved in *Finocchio* such as exists here. Second, and more importantly, using the death benefits basis for valuation under the agreement leaves nothing beyond the practice itself to be valued, because that approach assumes that the life of the license (of the degree), like that of the licensee (or degree holder) with which it is necessarily coterminous, has come to an end".

Further, the court awarded plaintiff a 50% interest in the "Dome Project" receivable, before payment of income taxes. The court determined that defendant's interest in the Buffalo Sabres hockey team was marital property and awarded plaintiff 50% of defendant's interest in that team. The court further awarded plaintiff a 50% interest in defendant's law firm pension but declined to award her a share of either the IRA account or the 401K plan.

The court awarded plaintiff maintenance of $30,000 per year for a term of 10 years or upon the happening of any of the following contingencies: (1) the death of either party, (2) plaintiff's remarriage or (3) plaintiff's receipt of the anticipated inheritance from plaintiff's father. Defendant appeals and plaintiff cross-appeals from certain portions of the judgment of divorce.

## II

Both parties challenge the court's valuation of defendant's law practice. Additionally, plaintiff challenges the court's failure to value separately defendant's law license.

We conclude that the court erred in determining the value of defendant's law practice and in failing to value separately defendant's law license (*see, McSparron v McSparron*, 87 NY2d 275; *Finocchio v Finocchio, supra*, at 1045-1046). We further conclude that the court did not err either in utilizing the death benefit provision of the law firm partnership agreement in reaching its determination of the value of defendant's law practice or in rejecting the argument that

taxes should be deducted from the death benefit (*see, Harmon v Harmon*, 173 AD2d 98, 105). The court properly deducted from the value of the practice the potential "Dome Project" receivable. The court erred, however, in adding to the death benefit valuation a $360,000 group term life insurance benefit. It should have added to that valuation $180,000, representing the amount that was previously deducted and is equal to "two times the amount by which the amount of group term life insurance on the life of the deceased partner exceeds $270,000" in determining the value of defendant's law practice.

We observe that there is no uniform rule for fixing the value of a law practice for equitable distribution purposes (*see, Amodio v Amodio*, 70 NY2d 5, 7) and that valuation of a law practice is "an exercise properly within the fact-finding power of the trial courts, guided by expert testimony" (*Burns v Burns*, 84 NY2d 369, 375). In light of our determination that the court must assign an independent valuation to defendant's law license, the court may wish to determine the value of defendant's law practice by a valuation method other than utilization of the death benefit provision of the partnership agreement. For example, the court may select a more realistic valuation method based upon defendant's actual participation in an ongoing business enterprise rather than a method based upon defendant's fictional death, i.e., utilization of the death benefit provision of defendant's partnership agreement (*see generally, Burns v Burns, supra*, at 375).

Turning to the issue of the independent valuation to be assigned to defendant's law license, we observe that it is now settled law that where, as here, "the licensee has already embarked on his or her career and has acquired a history of actual earnings, the foregoing theoretical valuation method [used for valuing a newly earned license] must be discarded in favor of a more pragmatic and individualized analysis based on the particular licensee's remaining professional earning potential" (*McSparron v McSparron, supra*, at 286; *see also, Finocchio v Finocchio, supra*). In making that valuation, however, "care must be taken to ensure that the monetary value assigned to the license does not overlap with the value assigned to other marital assets that are derived from the license such as the licensed spouse's professional practice" (*McSparron v McSparron, supra*, at 286). Thus, "to avoid a double count, the income used in determining the present value of the practice must be deducted from the calculation of future enhanced earning capacity" (Scheinkman, 1995 Supp Practice

Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1996 Supp Pamph, at 46). "The courts must also be meticulous in guarding against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses" (*McSparron v McSparron, supra,* at 286). Consequently, where, as here, there is a maintenance award, "the court [is] obliged to reduce the value of the enhanced earnings by the amount awarded in maintenance. Not to do so would involve a double counting of the same income" (Scheinkman, 1995 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1996 Supp Pamph, at 46).

## III

We reject the contention of defendant that the court erred in awarding plaintiff a 50% interest in the Buffalo Sabres stock owned by defendant and in defendant's law firm pension. We reject the contention of plaintiff that the court erred in failing to award her an interest in defendant's IRA account and 401K plan. We also reject the contention that the court erred in awarding plaintiff a 50% interest in the pretax amount of the "Dome Project" receivable. Defendant failed to present "some evidence from which the court could have determined the dollar amount of the tax consequences" (*De La Torre v De La Torre,* 183 AD2d 744, 745). Contrary to defendant's contention, the record shows that the court, in distributing the remaining marital property, gave due consideration to plaintiff's probable future financial circumstances.

Therefore, the judgment should be modified by vacating the decretal paragraphs that provide for equitable distribution of the marital property, and the matter should be remitted to Supreme Court to make appropriate findings of fact and a redistribution of the marital property that takes into account, *inter alia,* the value of defendant's law license and law practice. In making that redistribution, the court should reevaluate its distribution of the remaining marital property, although we conclude that there is otherwise no basis to disturb that distribution.

## IV

Further, there is no merit to the contention of plaintiff that the amount and duration of the maintenance award are inadequate. The provision of the judgment relating to the termination of maintenance upon the happening of a particu-

lar future event, however, is unauthorized (*see, Baumgart v Baumgart*, 199 AD2d 1049, 1050). Lastly, inasmuch as the matter is being remitted for a redistribution of the marital property and a redistribution of that property is a factor to be considered in determining the amount and duration of maintenance (*see*, Domestic Relations Law § 236 [B] [6] [a] [1]), the judgment should be further modified by vacating the maintenance award although there is no other basis to disturb the amount and duration of the award. In all other respects, the judgment should be affirmed.

PINE, J. P., WESLEY, BALIO AND BOEHM, JJ., concur.

Judgment unanimously modified, on the law, and as modified, affirmed, without costs, and matter remitted to Supreme Court for further proceedings in accordance with the opinion by DAVIS, J.

SARAH WADSWORTH, Respondent-Appellant, v JAMES WADSWORTH, Appellant-Respondent. (Appeal No. 2.)—Appeal and cross appeal unanimously dismissed without costs (*see, Matter of Eric D.* [appeal No. 1], 162 AD2d 1051). (Appeals from Judgment of Supreme Court, Erie County, Howe, J.—Equitable Distribution.) Present—PINE, J. P., WESLEY, BALIO, DAVIS and BOEHM, JJ.