OPINION OF THE COURT
Robert A. Spolzino, J.
The question presented here is whether in rejecting the “merger” theory of valuing professional licenses in McSparron v McSparron (87 NY2d 275 [1995]), the Court of Appeals also intended to depart from the precept that the value of a long-held license is determined on the basis of the holder’s actual earnings, rather than its theoretical value. The issue arises in the context of the plaintiffs motion for an order establishing, for equitable distribution purposes, the value of the defendant’s; enhanced earning capacity as a professional engineer to be $296,000, on the basis of the license’s inherent economic value, without regard to the defendant’s actual earnings during his career. The defendant has cross-moved for an order fixing that value at $18,400, based upon his actual earning history, rather than the theoretical value of the license. In addition, the defendant has cross-moved for an order directing that the proceeds of the marital residence be divided 75% to the defendant and 25% to the plaintiff, and that the plaintiff be required to pay the full expenses relating to the computer expert services of Kreestof Chandley. For the reasons that follow, the motion is denied and the cross motion is granted to the extent that the value of the defendant’s engineering license is established to be $18,400. In all other respects, the cross motion is denied.
Value of the Defendant’s Engineering License
The evidence of the value of the defendant’s license as a professional engineer upon which both parties rely is set forth *125 in the valuation report submitted to the court by Gary M. Karlitz, C.P.A. Mr. Karlitz, the court appointed neutral expert, presented, at the parties’ request, two alternative valuations for the defendant’s enhanced earning capacity resulting from his license as a professional engineer, one in the amount of $296,000, based upon economic value without regard to the defendant’s actual career, and the other in the amount of $18,400, based upon the defendant’s actual earning history. The plaintiff naturally seeks the higher value. The defendant argues for the lower value. The expert recommends the lower. The expert is correct.
Before addressing the merits of this dispute, the court notes that it has the authority to decide the valuation issue at this stage of the proceedings. Both parties have requested that the value of the defendant’s enhanced earnings capacity attributable to his license as a professional engineer be determined prior to trial, citing Hougie v Hougie (261 AD2d 161 [1st Dept 1999]). In Hougie, the Appellate Division, First Department, unanimously affirmed the Supreme Court’s denial of defendant’s motion for partial summary judgment dismissing so much of the complaint as sought equitable distribution of the defendant’s enhanced earning capacity as an investment banker. In so doing, the Court held that whether a particular marital asset was subject to equitable distribution is an issue that can be decided on what is, essentially, a motion for partial summary judgment prior to trial. Although the issue here is somewhat more complex, involving the method of valuation to be used rather than simply whether the asset is marital or separate, the procedure is similar and the court’s authority is no less, at least where both parties have requested the determination and there are no apparent issues of fact that impact the determination.
There is no factual dispute relevant to the valuation of the defendant’s engineering license. The defendant graduated from Rensselaer Polytechnic Institute in 1973, the same year in which the plaintiff and he were married. Five years later, after working for Flynn Burner Corporation under the supervision of a licensed professional engineer to qualify to take the New York State licensing examination, he passed the exam and was awarded a license as a professional engineer. The defendant never fully utilized his license, however. From 1978 to 1999, the defendant worked for three different employers in generally supervisory positions, none of which required the use of his professional engineering license. While the defendant did *126 utilize his license in 12 different professional “engagements” during this period, the actual economic value of those engagements was minimal and it is undisputed that the defendant never entered into a true professional engineering practice or otherwise obtained any meaningful remuneration from the direct use of his license.
Recognizing these undisputed facts, Mr. Karlitz valued the defendant’s license on the basis of his actual past earnings. After determining that a person such as the defendant in the New York metropolitan area who did not hold a license as a professional engineer would have earned $71,461 in 2000, the relevant year for valuation purposes here, and that the defendant’s average earnings were $74,618, and after factoring in the defendant’s age and the relevant tax considerations, Mr. Karlitz found the present value of the enhanced earning capacity by virtue of the license to be $18,400. For comparative purposes, and at the parties’ request, Mr. Karlitz then completed what he described as a hypothetical analysis, valuing the defendant’s enhanced earning capacity not on the basis of his actual earning history, but on the basis of the earnings of a typical professional engineer with the defendant’s background in the New York metropolitan area, which Mr. Karlitz found to be $116,097. Based upon this factor, the value enhanced earning capacity based upon the defendant’s license would be $296,000. In Mr. Karlitz’ opinion, however, this hypothetical analysis overstates the value.
The plaintiff, naturally, asks the court to apply the higher value, arguing, in reliance upon McSparron v McSparron (supra), that the defendant’s failure to utilize his license to any economically meaningful degree requires that the license be valued on the basis of its economic potential, rather than on the basis of the defendant’s actual earning history. Specifically, the plaintiff cites the following language from McSparron as supporting the higher valuation here:
“The value of a newly earned license may be measured by simply comparing the average lifetime income of a college graduate and the average lifetime earnings of a person holding such a license and reducing the difference to its present value (see, O’Brien v O’Brien, supra, at 582; 2 McCahey, Valuation & Distribution of Marital Property § 30.03 [3], at 30-19 — 30-21). In contrast, where the licensee has already embarked on his or her career and has acquired a history of actual earnings, the *127 foregoing theoretical valuation method must be discarded in favor of a more pragmatic and individualized analysis based on the particular licensee’s remaining professional earning potential (see, Finocchio v Finocchio, supra, at 1045-1046; Schei-nkman, op. cit., C236B:6, at 48 [1995 Cum Ann Pocket Part]).” (87 NY2d at 286.)
The plaintiff argues that since the defendant has never used his license as a professional engineer in the course of his employment, he has never “embarked upon” such a career within the meaning of the second category defined in McSparron, and therefore his license should be valued on the basis of his potential earnings as a professional engineer, as if the license were “newly earned.”
While the plaintiffs argument is interesting, it is ultimately inconsistent with the intent expressed by the Court of Appeals in McSparron. McSparron (at 286) clearly divides the universe of potential enhanced earnings valuation situations into two categories, one of which involves the “newly earned license” and the other of which involves the licensee who “has already embarked upon his or her career and has acquired a history of actual earnings.” As between these two categories, the defendant here clearly falls within the latter. Unquestionably, his license is not “newly earned,” and he “has acquired a history of actual earnings.” It is equally undeniable that he has “embarked upon his career.” That the defendant’s career may not have been the most remunerative course available to him as a professional engineer does not, under McSparron, require that his actual situation be ignored in determining the value of the license. To do so would be to disregard the “pragmatic and individualized analysis based on the particular licensee’s remaining professional earning potential” that McSparron (at 286) commands.
The continuing vitality of this approach to the valuation of a license later in the holder’s career is confirmed by the Court of Appeals’ favorable discussion of the economic analysis utilized in Finocchio v Finocchio (162 AD2d 1044 [4th Dept 1990]), DiCaprio v DiCaprio (162 AD2d 944 [4th Dept 1990]) and McGowan v McGowan (142 AD2d 355 [2d Dept 1988]), even while rejecting the terminology those Courts employed. Each of these cases, stripped of its “merger” language, holds simply that in situations such as that which is presented here, “projections of future earnings should be based on actual past earnings produced by actual practice” (McGowan, supra at 359 n). *128 Valuing a long-held license on the basis of its theoretical value is inconsistent with this approach.
The overarching lesson of McSparron is that the valuation of enhanced earning capacity is to proceed from “a commonsense approach that recognizes the ongoing independent vitality that a professional license may have and focuses solely on the problem of valuing that asset in a way that avoids duplicative awards.” (McSparron, supra at 285.) That “commonsense approach” clearly recognizes that the valuation must be accomplished in a way that has relevance to the parties’ actual situation. This is particularly true where, as here, the licensed spouse has pursued a specific career path in the course of a lengthy marriage. If marriage is an economic partnership, as the Legislature has commanded (see, O’Brien v O’Brien, 66 NY2d 576 [1985]), where, as here, that partnership is a lengthy one, its value must be distributed at its dissolution on the basis of the choices the partners have actually made during its course, not on the basis of some hypothetical formulation that bears little, if any, relation to the reality of the marriage. Having participated, to at least some extent, in the choices that resulted in the use made of the license during the marriage, the nonlicensed spouse should not be permitted to claim a windfall at the time of divorce on the basis of a theoretical valuation.
Here, there is no question that the valuation of the enhanced earnings capacity resulting from the defendant’s license as a professional engineer on the basis of the defendant’s actual earnings results in a value well below that which would be determined on the basis of a hypothetical formulation. The fact that the value of the license may, at this stage in the defendant’s career, be of little more than nominal value is not a basis for rejecting the analysis that led to that result. (See, McSparron, supra at 285-286.) The cases cited by the plaintiff also do not require such a result. At issue in Cronin v Cronin (131 Misc 2d 879 [Sup Ct, Nassau County 1986]) was whether the plaintiff’s license to practice law should be valued at all, not the manner in which its value should be calculated. Savasta v Savasta (146 Misc 2d 101 [Sup Ct, Nassau County 1989]), while addressing the issue of the value of an unused license, simply cannot be read as surviving McSparron. The plaintiff’s motion to value the defendant’s professional engineering license at $296,000 is, therefore, denied and the defendant’s cross motion, establishing the value of the license to be $18,400, is granted.
*129 Reallocation of the Proceeds of the Sale of the Marital Residence
By order of this court (Dillon, J.) dated September 4, 2001, the proceeds of the sale of the marital residence were directed to be divided in thirds, with one third being immediately distributed to the plaintiff, one third being immediately distributed to the defendant and the balance being held in escrow for distribution upon the ultimate division of the marital estate. The defendant cross-moves to modify this prior determination to provide for an immediate distribution of 75% of such proceeds to the defendant and 25% to the plaintiff. In support of this reallocation, the defendant argues that the plaintiff controls the overwhelming part of the marital estate and the defendant has little in the way of liquid assets. To the extent that the defendant seeks to reargue the allocation established by Justice Dillon, the cross motion in this regard cannot be granted. This court is without authority to modify a prior determination made by Justice Dillon except upon proof of a significant change in circumstances, which has not been demonstrated here. To the extent that the defendant seeks a distribution of the proceeds of the sale of the marital residence independent of Justice Dillon’s interim determination, he apparently assumes that the court is presently in a position to effectuate the equitable distribution of the marital estate. It is not. The cross motion in this regard must, therefore, be denied.
Reallocation of the Computer Expert Fee
The defendant also cross-moves for an order directing that the fee of the expert appointed to investigate the information on the defendant’s computer be paid solely by the plaintiff. Although the moving papers fail to set forth the prior order or even to identify the share of the fee required by that order to be paid by the defendant, the defendant now seeks a reallocation on the grounds that the expert failed to discover evidence adverse to the defendant and that the expert was asked by the plaintiff to investigate matters beyond the scope of the court’s order. Again, even if the court were authorized or inclined to reconsider a determination made by Justice Dillon, the facts here present no basis for doing so. The measure of the propriety of a particular factual inquiry, and, consequently, of the apportionment of its cost, is the reasonable basis for its initiation, not a subsequent inquiry into whether it bore the fruit desired by its proponent. In the absence of proof that the plaintiff’s irrelevant inquiry adversely affected the cost of the *130 expert’s services, that inquiry provides no basis for reallocating payment of the expert’s fee.
Conclusion
Accordingly, for the foregoing reasons, the plaintiffs motion to fix the value of the enhanced earning capacity resulting from the defendant’s license as a professional engineer in the amount of $296,000 is denied. The defendant’s cross motion to fix such value is granted and the value of the defendant’s enhanced earning capacity by reason of his license as a professional engineer is found to be $18,400. The defendant’s cross motions for reallocation of the sales proceeds from marital residence and the cost of the computer expert’s services, are denied.