Achuthan v Achuthan (2020 NY Slip Op 00255)





Achuthan v Achuthan


2020 NY Slip Op 00255


Decided on January 15, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 15, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOSEPH J. MALTESE
HECTOR D. LASALLE
LINDA CHRISTOPHER, JJ.


2016-12655
2018-05634
 (Index No. 9591/14)

[*1]M. Radh Achuthan, appellant-respondent,
v
Nisha Sahai Achuthan, respondent-appellant. (Appeal No. 1.)
M. Radh Achuthan, appellant,
v
Nisha Sahai Achuthan, respondent. (Appeal No. 2.)


Hasapidis Law Offices, South Salem, NY (Annette G. Hasapidis of counsel), for appellant-respondent in Appeal No. 1 and appellant in Appeal No. 2.
Hegge & Confusione, LLC, New York, NY (Michael Confusione of counsel), for respondent-appellant in Appeal No. 1 and respondent in Appeal No. 2.



DECISION & ORDER
In an action for a divorce and ancillary relief, (1) the plaintiff appeals, and the defendant cross-appeals, from a judgment of divorce of the Supreme Court, Suffolk County (David T. Reilly, J.), entered October 21, 2016, and (2) the plaintiff appeals from an order of the same court dated March 16, 2018. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated July 22, 2016, made after a nonjury trial, awarded the defendant maintenance in the amount of $2,000 per month for a period of 10 years, directed the plaintiff to provide security for his obligation to pay maintenance, and equitably distributed the marital assets by awarding approximately 51% to the defendant and approximately 49% to the plaintiff. The order denied the plaintiff's motion, in effect, to vacate so much of the judgment of divorce as awarded the defendant maintenance, directed the plaintiff to provide security for his obligation to pay maintenance, and equitably distributed the marital assets, and thereupon, to award the plaintiff 60% of the marital assets.
ORDERED that the cross appeal from the judgment of divorce is dismissed as abandoned; and it is further,
ORDERED that the appeal from so much of the judgment of divorce as awarded the defendant maintenance in the amount of $2,000 per month for a period of 10 years and directed the plaintiff to provide security for his obligation to pay maintenance is dismissed as academic in light of our determination on the appeal from the order; and it is further,
ORDERED that the judgment of divorce is modified, on the law and in the exercise of discretion, by deleting the provisions thereof awarding the plaintiff and the defendant the amount of $87,200.50 each as their respective equitable shares of a CitiBank account containing $174,401, [*2]and substituting therefor provisions awarding the plaintiff the amount of $112,973.85 and the defendant the amount of $61,427.15 as their respective equitable shares of the CitiBank account containing $174,401; as so modified, the judgment of divorce is affirmed insofar as reviewed; and it is further,
ORDERED that the order is modified, on the law and in the exercise of discretion, by deleting the provisions thereof denying those branches of the plaintiff's motion which were, in effect, to vacate so much of the judgment of divorce as awarded the defendant maintenance and directed the plaintiff to provide security for his obligation to pay maintenance, and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an appropriate amended judgment of divorce in accordance herewith; and it is further,
ORDERED that one bill of costs in connection with each separately briefed appeal is awarded to the plaintiff.
The parties were married on May 28, 1981, in New Delhi, India, and have one adult daughter. At the time of the marriage, the plaintiff was 45 years old and the defendant was 36 years old. At the time of trial in 2015, the plaintiff and the defendant were approximately 80 years old and 71 years old, respectively.
At the time of the marriage, the plaintiff was a professor of physics at Southampton College, where he had been employed since 1966. At the time of trial, he was employed full time at Long Island University with an annual salary of approximately $122,530, and he had annual social security income in the amount of $29,014.
At the time of the marriage, the defendant was studying for her doctorate in political science at Columbia University while on leave from her position with the government of India, where she had been employed since 1968. After obtaining her doctorate in 1985, the defendant returned to India and resumed her career with the government of India in order to qualify for her 20- year "golden handshake" retirement package, which she expected to receive in 1988. However, she was unable to qualify due to her years of absence while pursuing her studies in the United States. She continued to work for the government of India until retiring in 1999 at the age of approximately 55. At trial, there was scant evidence regarding the amount of the defendant's earnings during the years she was employed in India. Upon her retirement, the defendant's pension was in the amount of approximately $7,500 per year. According to the defendant, there are governmental restrictions that impede her ability to transfer funds out of India. Notwithstanding that the defendant obtained her green card in approximately 2001, which she achieved with the help of an attorney paid for by the plaintiff, she never secured gainful employment in the United States. At the time of trial in 2015, she had been working as a freelance interpreter but claimed that she had only earned $240 for the year and that the contract had terminated. Since 2010, the defendant received social security income of $14,400 per year based on the plaintiff's earnings. The Supreme Court determined that the defendant's income from all sources was $55,000 per year.
For a significant amount of time during their 33-year marriage, the plaintiff and the defendant lived apart, with the plaintiff residing at the marital residence located in Southampton, which he had purchased prior to the marriage, and the defendant residing in India. After their marriage in 1981, the parties resided together at the marital residence from July 1981 through November 1985, along with their daughter, who was born in October 1982. For the daughter's first three years, the defendant was her primary caregiver, with the plaintiff assisting in the late afternoons while the defendant worked on her studies. Subsequently, in December 1985, the defendant returned to India with the parties' daughter and remained in India until approximately 1999. Over the course of the years 1985 to1999, the family spent time together intermittently in India, in Southampton, and while on vacation. The parties' daughter resided with the defendant in India from 1985 to 1997, except for the 1993-1994 school year, during which she resided with the plaintiff in Southampton. The parties' daughter began living with the plaintiff and attending high school in Southampton in 1997 and remained in the United States, except for periodic visits to India. After retiring, the [*3]defendant returned to the marital residence in Southampton in 2000, where she resided intermittently between Southampton and India until May 2014, when the divorce action was commenced, after which the defendant remained in the United States.
During the marriage, while maintaining separate finances, the parties each amassed substantial marital assets. The parties agreed that the plaintiff accumulated marital assets totaling $2,573,440.69, including real property located in India with a value of $733,179.23. The defendant accumulated marital assets totaling $1,424,673.55, including real property located in India, the marital portion of which was valued by the Supreme Court at $1,234,072.57 after awarding the defendant a separate property credit of $63,714.55.
This action for a divorce and ancillary relief was commenced on May 8, 2014. At trial, the parties stipulated, inter alia, to the identity and valuation of all the marital property at the time of commencement, except for the value of the real property in India, which was ultimately determined by the Supreme Court after trial. The issues of equitable distribution and maintenance were determined by the court after a nonjury trial in a decision dated July 22, 2016. The court entered a judgment of divorce on October 21, 2016. The court, inter alia, (1) awarded the defendant maintenance in the amount of $2,000 per month for a period of 10 years, (2) directed the plaintiff to provide security for his obligation to pay maintenance, and (3) equitably distributed the marital assets by awarding approximately 51% to the defendant and approximately 49% to the plaintiff. The court stated that "[s]ome additional assets were distributed to the defendant as an adjustment for the loss of health insurance benefits." One of the marital assets distributed by the court was the marital portion of the plaintiff's TIAA-CREF account, which was stipulated to be in the amount of $945,082, which the court divided equally between the parties. The remaining portion of the plaintiff's TIAA-CREF account in the amount of $1,027,239.89 was stipulated to be the plaintiff's separate property. The plaintiff appeals from stated portions of the judgment of divorce. While the defendant filed a notice of cross appeal from the judgment of divorce, we must dismiss the cross appeal as abandoned since the defendant does not seek reversal or modification of any portion of the judgment of divorce in her brief (see Kamins v United Healthcare Ins. Co. of N.Y., Inc., 171 AD3d 715, 716).
By letter dated June 19, 2017, TIAA-CREF advised the plaintiff that an error was previously made in the calculations of the marital portion of the plaintiff's TIAA-CREF account. As a result of the recalculations, the marital portion of the TIAA-CREF account, which had been calculated at $945,082, was increased by approximately $800,000 to approximately $1,755,724. The plaintiff's separate property portion was correspondingly decreased by approximately $800,000 from $1,027,239.89 to approximately $214,000, for a net loss of approximately $400,000. The defendant's net assets were concomitantly increased by $400,000.
Based on these new calculations, in August 2017, the plaintiff moved, in effect, pursuant to CPLR 5015(a)(2) to vacate, on the ground of newly discovered evidence, so much of the judgment of divorce as awarded the defendant maintenance, directed the plaintiff to provide security for his obligation to pay maintenance, and equitably distributed the marital assets, and thereupon, to award to the plaintiff 60% of the marital assets. In an order dated March 16, 2018, the Supreme Court denied the motion, concluding that the miscalculation of the marital portion of the TIAA-CREF account did not necessitate vacatur of any portion of the judgment of divorce. The court further concluded that although the new calculations provided "an increase in the marital portion of the accounts, and therefore, an increase in the amount awarded to defendant with a concomitant decrease in plaintiff's separate property award," this shift did not affect the determination of the amount of maintenance, as "the distribution of marital property was but one factor" in making that determination. The plaintiff appeals from the order.
On appeal from the judgment of divorce, the plaintiff argues that the Supreme Court should not have awarded the defendant a greater share of the marital assets than it awarded him and, moreover, that the court should have awarded him a greater share of the marital assets, as the parties basically lived separate lives and the court made improper awards with respect to the defendant's Indian property.
" The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed'" (Spencer-Forrest v Forrest, 159 AD3d 762, 764, quoting Gafycz v Gafycz, 148 AD3d 679, 680). "The equitable distribution of marital assets must be based on the circumstances of the particular case and the consideration of a number of statutory factors" (Brinkmann v Brinkmann, 152 AD3d 637, 638; see Domestic Relations Law § 236[B][5][d]). Those factors include, inter alia, the income and property of each party at the time of the marriage and at the time of the commencement of the action; the duration of the marriage and the age and health of both parties; the loss of inheritance rights and pension rights; any award of maintenance; any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of marital property by the party not having title; the liquid or nonliquid character of all marital property; the loss of health insurance benefits upon dissolution of the marriage; the probable future financial circumstances of each party; and any other factor which the court shall expressly find to be just and proper (see Domestic Relations Law § 236[B][5][d]; Brinkmann v Brinkmann, 152 AD3d at 638). "While equitable distribution does not necessarily mean equal distribution, when both spouses have made significant contributions to a marriage of long duration, the division of marital property should be as equal as possible" (Eschemuller v Eschemuller, 167 AD3d 983, 984-985; see Spencer-Forrest v Forrest, 159 AD3d at 764).
Here, while we agree with the plaintiff's contention that the Supreme Court improvidently exercised its discretion in directing a division of the marital assets resulting in the defendant being awarded a greater share of the assets (approximately 51%) than the plaintiff (approximately 49%), particularly where there were significant liquid assets to easily accomplish an equal distribution, we do not agree with the plaintiff's contention that he should be awarded a greater share of the marital assets than the defendant. Considering the relevant factors, as well as the circumstances of this case, there is no basis for an unequal distribution of marital assets.
The Supreme Court's reasoning that the defendant required additional marital assets "as an adjustment for the loss of health insurance benefits" was flawed, inasmuch as the defendant is eligible for Medicare and she received a sizable award of marital assets.
Similarly, there is no basis for the defendant to receive less than 50% of the marital assets. This case is unlike those cases in which one of the parties has engaged in conduct constituting economic fault (see Stewart v Stewart, 133 AD3d 493; Branche v Holloway, 124 AD3d 553; Frey v Frey, 68 AD3d 1052; Michaelessi v Michaelessi, 59 AD3d 688), or the contributions to the marriage are so one-sided (see Evans v Evans, 57 AD3d 718; Hathaway v Hathaway, 16 AD3d 458; K. v B., 13 AD3d 12) that an unequal distribution is appropriate. Here, there is no evidence of economic fault on the part of either party, and while the parties' relationship was unusual, it cannot be said that the defendant did not contribute to the marriage. Although each party maintained his or her assets and income separately, with the plaintiff accumulating a significantly greater amount of assets over the course of their 33-year marriage, together the parties managed to accumulate a sizable marital estate, with the defendant having amassed a significant portion of the parties' assets. The Supreme Court aptly noted the unique nature of the economic relationship between the plaintiff and the defendant, and found that they "did not enter an economic partnership during the course of the marriage in a traditional sense" and that "[t]heir marriage was independently cooperative." However, the economic decisions made by the parties during their marriage should not be second-guessed by the court (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421). While the parties lived separately for substantial periods of time during their marriage, the plaintiff apparently acquiesced to this arrangement. Moreover, the defendant had a significant role in raising the parties' daughter, who resided with both parties until she was three years old, and who then resided solely with the defendant in India for the next 12 years except for one school year that she spent with the plaintiff. Accordingly, to implement an equal distribution of the marital assets, we modify the judgment of divorce by awarding the plaintiff the amount of $112,973.85 instead of $87,200.50 from the CitiBank account containing $174,401, and by awarding the defendant the amount of $61,427.15 instead of $87,200.50 from that CitiBank account.
We agree with the Supreme Court's determination to award the defendant a separate [*4]property credit of $63,714.55 with regard to the property she owns in India. The defendant overcame the presumption that her separate property funds, which were commingled in a bank account with marital funds, constituted marital property, as she demonstrated that the funds had been deposited into the account with marital funds for only one day as a matter of convenience (see Belilos v Rivera, 164 AD3d 1411, 1412-1413; Chamberlain v Chamberlain, 24 AD3d 589, 593; Wade v Steinfeld, 15 AD3d 390, 391). Moreover, the marital account into which the funds at issue were deposited was held only in the defendant's name (see Terasaka v Terasaka, 130 AD3d 1474, 1475). Further, the court's determination was based upon its finding that the defendant's testimony was credible, and upon a review of the record, we perceive no reason to disturb this finding of credibility, which is entitled to great deference on appeal (see Lieberman v Lieberman, 21 AD3d 1004, 1005).
The plaintiff's appeal from so much of the judgment of divorce as awarded the defendant maintenance in the amount of $2,000 per month for a period of 10 years and directed the plaintiff to provide security for his obligation to pay maintenance must be dismissed, as our determination on the appeal from the order has rendered these issues academic.
"In order to succeed on a motion pursuant to CPLR 5015(a)(2) to vacate an order or judgment on the ground of newly discovered evidence, the movant must establish that the evidence could not have been discovered earlier through the exercise of due diligence and that the newly discovered evidence would probably have produced a different result" (Wall St. Mtge. Bankers, Ltd. v Rodgers, 148 AD3d 1088, 1089 [citations omitted]).
Here, the plaintiff established that the incorrect calculations of the marital portion of the plaintiff's TIAA-CREF account had been provided to the plaintiff by a third party, TIAA-CREF, prior to the trial. The record is devoid of any evidence that the plaintiff had any basis to conclude that those calculations were incorrect until such time that TIAA-CREF provided the new calculations upon the plaintiff contacting it with regard to a Qualified Domestic Relations Order subsequent to the entry of the judgment of divorce. Moreover, the plaintiff demonstrated that the new calculations of the marital portion of the plaintiff's TIAA-CREF account would produce a different result to the extent that so much of the judgment of divorce that awarded the defendant maintenance should be vacated.
" [T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts'" (Papakonstantis v Papakonstantis, 163 AD3d 839, 840, quoting Repetti v Repetti, 147 AD3d 1094, 1096; see Nadasi v Nadel-Nadasi, 153 AD3d 1346, 1350). "Where, as here, an action was commenced prior to the amendments to the Domestic Relations Law effective January 23, 2016 (see L 2015, ch 269, § 4), the factors to be considered include the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, [and] the reduced or lost earning capacity of the party seeking maintenance'" (Candea v Candea, 173 AD3d 663, 665, quoting Gordon v Gordan, 113 AD3d 654, 655; see Papakonstantis v Papakonstantis, 163 AD3d at 840-841). Based on the recalculation by TIAA-CREF, the marital portion of the plaintiff's TIAA-CREF account was increased by approximately $800,000 from the amount stipulated to at the time of trial. Considering the defendant's receipt of an additional $400,000 to her already substantial equitable distribution award of almost $2 million and the reduction of the plaintiff's total assets by $400,000, as well as the circumstances of this case, including the parties' ages at the time of trial—the plaintiff was 80 years old and the defendant was 71 years old—and the parties' incomes, there is no basis to award the defendant maintenance. Therefore, the Supreme Court should have granted those branches of the plaintiff's motion which were, in effect, to vacate so much of the judgment of divorce as awarded the defendant maintenance and directed the plaintiff to provide security for his obligation to pay maintenance.
With regard to that branch of the plaintiff's motion which was, in effect, to vacate so much of the judgment of divorce as awarded the defendant approximately 51% of the marital assets and awarded the plaintiff approximately 49% of the marital assets, and thereupon, to award [*5]the plaintiff 60% of the marital assets, for the reasons previously set forth in relation to the appeal from the judgment of divorce, we have determined that the defendant is entitled to 50% of the marital assets (see Eschemuller v Eschemuller, 167 AD3d at 984-985; Spencer-Forrest v Forrest, 159 AD3d at 764). The fact that the plaintiff's separate property has been decreased does not change our prior reasoning that based on the circumstances of this case and in consideration of the relevant factors set forth in Domestic Relations Law § 236(B)(5)(d), each party is entitled to an equal share of the marital assets.
SCHEINKMAN, P.J., MALTESE, LASALLE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court