Parkoff v Parkoff (2021 NY Slip Op 04025)





Parkoff v Parkoff


2021 NY Slip Op 04025


Decided on June 23, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 23, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
BETSY BARROS
LINDA CHRISTOPHER
PAUL WOOTEN, JJ.


2017-10901
 (Index No. 202956/12)

[*1]David Parkoff, appellant-respondent,
v
Linda Parkoff, respondent-appellant.


Law Offices of Joel J. Ziegler, PLLC, Smithtown, NY, for appellant-respondent.
Hennessey & Bienstock LLP, New York, NY (Patricia Hennessey and Dilpreet K. Rai of counsel), for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, and the defendant cross-appeals, from a judgment of divorce of the Supreme Court, Nassau County (Stacy D. Bennett, J.), entered August 25, 2017. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated April 20, 2016, made after a nonjury trial, equitably distributed the parties' marital property equally and determined that the plaintiff's shares of Verizon and Exxon Mobil stock were not his separate property. The judgment of divorce, insofar as cross-appealed from, upon the decision, valued the parties' investment accounts as of the commencement date of the action and failed to award the defendant statutory interest on the funds held in the plaintiff's investment accounts.
ORDERED that the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The parties were married on August 29, 1965, and have one emancipated child together. At the time the trial in this action commenced in 2015, both parties were 71 years old.
Immediately after the marriage, from 1965 to 1968, the parties resided in Massachusetts, where the plaintiff attended law school. During the plaintiff's first year of law school, the defendant worked as a secretary and switchboard operator, and used her wages to pay the parties' living expenses. In 1967 and 1968, the defendant attended graduate school and obtained a master's degree in English. The defendant did all of the cooking and housekeeping during the time the parties resided in Massachusetts. Thereafter, the parties moved to New York, and in 1985, they began residing in the marital residence located in Hewlett Neck.
After moving to New York in 1968, the plaintiff was employed as a teacher until he secured a legal position in 1970. In 1978, he began working at Hertz Corporation (hereinafter Hertz) in the position of staff counsel, and by 1998, he had been promoted to associate general counsel and remained in that position until he retired in August 2012. The plaintiff deposited his income in the parties' joint checking account, which was used to pay household expenses. The plaintiff's Medicare wages on his 2012 W-2 form were $469,649.
From 1968 to 1980, the defendant was employed full time by the Bellmore-Merrick Central High School District as a high school English teacher. In 1980, the parties' daughter was born, and the defendant took maternity leave until she returned to work in 1984 on a less-than-full-time basis. In 1987, she obtained employment as an adjunct professor teaching two courses each semester at Hofstra University, where she continued until 2012. In 1992, she obtained an additional adjunct teaching position at Nassau Community College. From 1968 to 1980, the defendant deposited her income from her employment in the parties' joint accounts. When she returned to work after the birth of the parties' daughter, she deposited her income into her individual accounts. The defendant testified at trial that the plaintiff told her that since she was not earning a lot, she should keep her income. The defendant's Medicare wages on her 2012 W-2 form were $31,869.
Throughout the marriage, the defendant was the primary caretaker of the parties' daughter. During his employment with Hertz, the plaintiff worked long hours.
In 1989, the defendant told the plaintiff that she wanted a divorce, and the plaintiff proceeded to unilaterally divide the parties' bank accounts. However, no divorce action was commenced, and the parties continued to reside together. From that time forward, the plaintiff gave the defendant $1,400 per month to pay for food expenses, dry cleaning, and household expenses. The defendant used funds from her individual accounts for additional household expenses, including her clothing and psychotherapy, for which the plaintiff did not pay, and some of the expenses for the parties' daughter.
Between 2001 and 2012, the plaintiff paid all the carrying charges of the marital residence.
The plaintiff continued to prepare and file joint tax returns for the parties through 2012, as he had done for each year they were married since 1966.
In 1999, the defendant purchased a condominium in Saratoga Springs, near where the parties' daughter was attending college. The plaintiff was not in agreement with and was not involved in making the purchase. The defendant used her individual funds for the purchase and to pay all the carrying costs associated with the condominium, which was titled in her name. The defendant would stay at the Saratoga Springs residence on a significant number of weekends, during school recesses, and during part of the summer. The residence was sold in June 2014, and the proceeds were deposited in escrow pursuant to stipulation.
In 2001, without consulting with the plaintiff, the defendant elected to receive the maximum retirement benefit from the New York State teachers retirement system, foreclosing the plaintiff from any survivorship rights. The plaintiff receives approximately $1,199 per month from this pension.
From 2001 to 2012, the defendant prepared dinners for the plaintiff and took care of the household when she was at the marital residence. During that time period, the parties went to the movies together one time and occasionally watched television during dinner; they never entertained friends and rarely entertained family. The plaintiff took care of his own laundry and dry cleaning and cleaned up after his meals. From 2001 to 2012, the parties celebrated Jewish holidays and Thanksgiving dinners hosted by the defendant's sister. They traveled to Massachusetts five times to visit their daughter, and in 2005, they vacationed together in New Mexico. After 2001, the parties attended various concerts together at the Tilles Center at C.W. Post and the 92nd Street Y in Manhattan, including a New Year's Eve concert given by the Long Island Philharmonic in 2011. Also after 2001, the plaintiff attended two awards ceremonies at Hofstra University with the defendant when she was the recipient of an award. During this time period, the defendant sometimes traveled to New Mexico with her sister or the parties' daughter. Previously in the 1990s, the defendant began to take vacations on her own, claiming that the plaintiff did not want to go on vacation any more.
As of the date of the parties' marriage, the plaintiff owned 427 shares of General [*2]Telephone & Electronics Corporation stock and 40 shares of Socony Mobil Oil Company, Inc., stock. At the time this action was commenced, the plaintiff held 3,838 shares of Verizon stock and 3,353 shares of Exxon Mobil stock.
During the marriage, the parties acquired assets in excess of $6 million. The parties agreed that at or near the time this action was commenced, the bank accounts titled in the defendant's name had $1,151,533 on deposit, and those titled in the plaintiff's name had $1,390,744 on deposit. The plaintiff had approximately $1 million more than the defendant in stock and brokerage accounts titled in his name. Additionally, the plaintiff's retirement assets at the commencement of this action were in the sum of $1,432,312 in addition to a defined benefit plan that was valued at $669,120 as of June 2015, while the defendant's retirement assets were in the sum of $173,032 plus her pension, which has been in pay status since 2001.
On October 23, 2012, after more than 47 years of marriage, the plaintiff commenced this action against the defendant for a divorce and ancillary relief. At the nonjury trial, the parties agreed to certain facts, including, inter alia, the identification, title, and balance of the parties' marital assets at or near the time of the commencement of the action. After the trial, in a judgment of divorce entered August 25, 2017, the Supreme Court, inter alia, equitably distributed the parties' marital property equally, determined that the plaintiff's shares of Verizon and Exxon Mobil stock were not his separate property, valued the parties' investment accounts as of the commencement date of the action, and failed to award the defendant statutory interest on the funds held in the plaintiff's investment accounts. The plaintiff appeals, and the defendant cross-appeals.
"'The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed'" (Spencer-Forrest v Forrest, 159 AD3d 762, 764, quoting Gafycz v Gafycz, 148 AD3d 679, 680). Moreover, where, as here, "a determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses and the proffered items of evidence is afforded great weight on appeal" (Kaufman v Kaufman, 189 AD3d 31, 56; see Sufia v Khalique, 189 AD3d 1499, 1500). "While equitable distribution does not necessarily mean equal distribution, when both spouses have made significant contributions to a marriage of long duration, the division of marital property should be as equal as possible" (Kamm v Kamm, 182 AD3d 590, 591 [internal quotation marks omitted]).
Here, considering the relevant factors, as well as the circumstances of this case, contrary to the plaintiff's contention, there is no basis for an unequal distribution of marital assets (see Achuthan v Achuthan, 179 AD3d 751, 757; Eschemuller v Eschemuller, 167 AD3d 983, 985; Greenberg v Greenberg, 162 AD3d 870, 873). In fashioning its equitable distribution award of the marital property, the Supreme Court properly considered the relevant factors and took into consideration its findings that the defendant was credible, while the plaintiff's testimony lacked credibility (see Greenberg v Greenberg, 162 AD3d at 873). While the plaintiff contends that the parties' economic partnership terminated in 2001, mandating an unequal division of the marital assets, the record evidences that there is no merit to this contention. From 2001 until the commencement of the action, the parties continued to reside together, the plaintiff continued to provide the defendant with $1,400 monthly to pay for certain household expenses, the plaintiff continued to prepare and file the parties' joint tax returns, the defendant prepared dinners for the plaintiff and took care of the household, and the plaintiff accompanied the defendant to two work-related award ceremonies, celebrated holidays with the defendant's family, and attended some concerts with the defendant. Moreover, the defendant was the primary caretaker for the parties' daughter and worked for all but approximately four years during this 47-year marriage, during which the parties amassed a substantial marital estate. While the parties maintained separate finances, under these circumstances, the economic decisions made by the parties should not be second-guessed by the court (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421; Achuthan v Achuthan, 179 AD3d at 757).
The Supreme Court providently exercised its discretion in determining that the plaintiff's shares of Verizon and Exxon Mobil stock that were acquired during the marriage were [*3]marital property. "'Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property'" (Spera v Spera, 71 AD3d 661, 664, quoting Massimi v Massimi, 35 AD3d 400, 402 [internal quotation marks omitted]; see Fields v Fields, 15 NY3d 158, 163; Ferrante v Ferrante, 186 AD3d 566, 568). Here, the plaintiff only offered his own testimony in support of his claim that the shares of General Telephone & Electronics Corporation and Socony Mobil Oil Company, Inc., stock that he acquired before the marriage were the sole source of the shares of Verizon and Exxon Mobil stock that were acquired during the marriage, and that he acquired additional shares in these companies solely through stock splits and dividend reinvestment. The plaintiff's self-serving testimony, without more, was insufficient to overcome the marital property presumption (see Ferrante v Ferrante, 186 AD3d at 568; Bernard v Bernard, 126 AD3d 658, 659; Marshall v Marshall, 91 AD3d 610, 611).
The defendant's contentions that the Supreme Court erred in valuing the parties' investment accounts as of the commencement date of the action and in failing to award her statutory interest on the funds held in the plaintiff's investment accounts are unpreserved for appellate review. In any event, the trial court has broad discretion to select an appropriate date for measuring the value of marital property between the date of commencement of the action and the date of trial (see Mesholam v Mesholam, 11 NY3d 24, 28; McSparron v McSparron, 87 NY2d 275, 287) and to determine whether an award of prejudgment interest is appropriate (see Pappas v Pappas, 140 AD3d 838, 840; Lipsky v Lipsky, 276 AD2d 753, 754; Morton v Morton, 130 AD2d 558, 560). In this case, the record demonstrates that the court providently exercised that discretion in reaching its determinations. Moreover, since the judgment of divorce did not set forth a distributive award or contain a money judgment, the defendant failed to demonstrate her entitlement to postdecision or postjudgment interest (see CPLR 5002, 5003).
RIVERA, J.P., BARROS, CHRISTOPHER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court